Argued and submitted November 20, 2001, OAR 860-032-0010(4), 860-032-0010(5), and 860-032-007(15) held valid July 17, 2002

BEAVER CREEK COOPERATIVE
TELEPHONE COMPANY,
*Petitioner,*

*v.*

PUBLIC UTILITY COMMISSION,
*Respondent.*

00-068; A109890

50 P3d 1231

Richard A. Finnigan argued the cause and filed the briefs for petitioner.

Jas. Jeffrey Adams, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy

Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Petitioner Beaver Creek Cooperative Telephone Company (Beaver Creek) seeks judicial review pursuant to ORS 183.400 of three rules adopted by the Oregon Public Utility Commission (PUC). Two of those rules, OAR 860-032-0010(4) and (5), require cooperatives seeking to provide local exchange telecommunications service within the boundaries of the local exchanges of other telecommunication services providers to obtain a certificate of authority as "competitive providers" under ORS 759.020. The third rule, OAR 860-032-0007(15), requires all holders of certificates of authority issued by the PUC to pay certain fees, taxes, and assessments.[1] Beaver Creek argues, *inter alia*, that those rules are *ultra vires* because ORS 759.020 does not apply to cooperatives. We reject that contention, as well as various federal preemption arguments that Beaver Creek raises. Consequently, we hold the challenged rules valid.[2]

In September 1999, the PUC initiated a proceeding to comprehensively update and revise its rules regarding the provision of competitive intrastate telecommunication services. Included in the proposed revisions were the three rules at issue in this review. The first two challenged rules, OAR 860-032-0010(4) and (5), require any cooperative operating within the local exchange boundaries of another telecommunications utility or cooperative to obtain a certificate of authority as a competitive provider under ORS 759.020. OAR 860-032-0010(4) provides:

"Local exchange telecommunications service provided by a telecommunications utility *or a cooperative* within the boundaries of local exchanges belonging to another telecommunications utility *or cooperative*, which exchanges are

---

[1] Beaver Creek also initially challenged the PUC's adoption of two other rules relating to quality of service standards. Before oral argument in this court, however, the PUC submitted a memorandum of additional authorities indicating that it had amended its rules and that, as amended, the challenged rules relating to service quality standards no longer facially applied to cooperatives. At oral argument, Beaver Creek withdrew those assignments of error.

[2] The application of the challenged rules to Beaver Creek is the subject of a related subsequent contested case proceeding and judicial review. *Beaver Creek Coop. Telephone Co. v. PUC (A112862)*, 182 Or App 576, 50 P3d 1240 (2002).

defined pursuant to ORS 759.005(2)(c), shall be considered the operations of a competitive provider, and may only be provided pursuant to a certificate of authority granted by the Commission under ORS 759.020. Such service shall be considered operations of a competitive provider without regard to the manner the provider treats those operations."[3] (Emphasis added.)

OAR 860-032-0010(5) provides:

"Telecommunications services provided by a telecommunications utility *or a cooperative* pursuant to a certificate of authority granted under ORS 759.020, wherein the provider was classified as a competitive provider for purposes of providing those services, shall be considered the operations of a competitive provider without regard to the manner the provider treats those operations." (Emphasis added.)

The third challenged rule, OAR 860-032-0007(15),[4] requires all holders of certificates of authority issued by the PUC to pay certain fees, taxes, and assessments. Beaver Creek argues that the PUC, in adopting each of those rules, exceeded the scope of its statutory authority and that the rules are consequently invalid.

At the core of this rule challenge is the proper relationship between two statutes, ORS 759.020 and ORS 759.025. ORS 759.020 provides, in part:

"(1) No person, corporation, company, association of individuals or their lessees, trustees, or receivers *shall provide intrastate telecommunications service on a for-hire basis* without a certificate of authority issued by the Public Utility Commission under this section.

---

[3] The term "competitive provider" used in OAR 860-032-0010 is apparently the PUC's shorthand of the term "competitive telecommunications services provider" used in ORS 759.020(5). *See* OAR 860-032-0001(1) (defining "competitive provider" as "a competitive telecommunications provider as defined in ORS 759.005(2)(a), who provides services authorized pursuant to ORS 759.020"); *see also* ORS 759.005(2)(a) (defining "competitive telecommunications provider" as a "telecommunications services provider which has been classified as such by the Public Utility Commission pursuant to ORS 759.020").

[4] OAR 860-032-0007(15) states:

"The certificate holder shall timely pay all Commission taxes, fees, or assessments *adopted pursuant to Oregon law or Commission rules, orders, tariffs or price lists.*"

"* * * * *

"(3) Except as provided in ORS 759.050, no certificate shall authorize any person to provide local exchange telecommunications service within the local exchange telecommunications service area of a telecommunications utility unless such utility consents, is unable to provide the service, or fails to protest an application. This subsection shall not apply to any application for a certificate by a provider of shared telecommunications services.

"* * * * *

"(5) The commission may classify a successful applicant for a certificate as a telecommunications utility or as a competitive telecommunications services provider. If the commission finds that a successful applicant for a certificate has demonstrated that services it offers are subject to competition or that its customers or those proposed to become customers have reasonably available alternatives, the commission shall classify the applicant as a competitive telecommunications services provider. The commission shall conduct the initial classification and any subsequent review of the classification in accordance with such procedures as the commission may establish by rule, after hearings. The commission may attach reasonable conditions to such classification and may amend or revoke any such order as provided in ORS 756.568." (Emphasis added.)

ORS 759.025, in turn, provides:

"(1) Notwithstanding ORS 759.020, the Public Utility Commission shall issue to any person, company or corporation providing intrastate telecommunications services that are subject to regulation by the commission on January 1, 1986, a certificate of authority to continue to provide those services on and after January 1, 1986.

"(2) Notwithstanding any other provision of law, the *commission shall issue to any cooperative corporation*, or unincorporated association providing intrastate telecommunications service on January 1, 1986, *a certificate of authority to continue to provide those services on and after January 1, 1986*. Such actions shall not subject such cooperative corporations or association to the commission's general powers of regulation." (Emphasis added.)

Before the PUC, Beaver Creek's principal argument was that OAR 860-032-0010(4) and (5) are *ultra vires* because the issuance of a certificate of authority to cooperatives is governed by ORS 759.025(2), and not ORS 759.020:

"There does not appear to be any reason why the Commission should extend its jurisdiction over cooperatives just because they offer service and enroll members in an expanded service area. ORS 759.020(1) provides the Commission with authority to issue certificates to a 'person, corporation, company, association of individuals or their lessees, trustees or receivers.' This statute does not mention cooperatives. If comparison is made to 759.025, substantially the same formula for the Commission's issuance of certificates is spelled out again in subsection 1 as any 'person, company or corporation.' Again, cooperative corporations are not mentioned in subsection 1. There is a special addition in ORS 759.025(2) which allows the Commission to issue cooperative corporations certificates. A parallel provision does not exist in ORS 759.020."

The PUC disagreed. In rejecting Beaver Creek's argument, the PUC reasoned that the fact that cooperatives were generally exempt from regulation did not mean that, in certain instances, the PUC would not have some regulatory authority over cooperatives.[5] In addition, the PUC rejected Beaver Creek's argument that ORS 759.025(2) somehow exempted cooperatives from the certification requirements in ORS 759.020. That statute, the PUC reasoned, simply functioned to "ensure[ ] legal and service continuity on January 1, 1986, the date that new laws regarding competitive service providers became effective." Finally, the PUC reasoned that, in all events, subjecting cooperatives to the same certification requirements as other entities providing competitive local exchange telecommunications services was required by federal law:

"[Under section 253 of the federal Telecommunications Act of 1996, 47 USC § 253 (Supp 2001),[6] a]ll parties seeking to

---

[5] As support for that proposition, the PUC pointed to the territory allocation statutes, codified at ORS 759.500 to ORS 759.570, and noted that those statutes, "for example, explicitly apply to cooperatives."

[6] 47 USC section 253 provides, in relevant part:

"(a) No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.

provide telecommunications services within a particular area must be regulated in a competitively neutral manner. Applying common regulations to all such parties is a key element to that treatment. At both the state and national level, cooperatives and other small, rural companies receive financial and regulatory treatment reflecting their unique circumstances, tasks, and responsibilities. They are relieved from complying with many of the network unbundling and open access requirements and they are protected from uncontrolled market entry in their service areas. However, once they seek to move beyond the scope of their original circumstances and become competitive providers in areas already served by others, federal law requires that they be treated as are all other parties."

Accordingly, the PUC adopted OAR 860-032-0010(4) and (5) as proposed.

On judicial review, Beaver Creek challenges OAR 860-032-0010(4) and (5) on several grounds. First, Beaver Creek argues that the PUC has no authority under ORS 759.020 to adopt a rule classifying all cooperatives operating within the local exchange boundaries of another telecommunications provider as "competitive telecommunications provider[s]." According to Beaver Creek, the fact that cooperatives are entitled to obtain certificates of authority under ORS 759.025(2) indicates that the certificate of authority provision in ORS 759.020 is inapplicable to cooperatives. In addition, Beaver Creek argues that: (1) the PUC's promulgation of those rules was predicated on the territory allocation statute, ORS 759.500 *et seq.*; (2) the territory allocation statute is itself preempted by section 253 of the Telecommunications Act; and (3) consequently, the PUC acted without authority when it adopted proposed OAR 860-032-0010(4) and (5).

The PUC's response is threefold. First, the PUC argues that, as a matter of statutory interpretation, ORS 759.020 applies to cooperatives and, thus, the PUC had the

---

"(b) Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 of this section, requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers."

statutory authority to "to adopt an administrative rule that treats a cooperative telephone company as a competitive telecommunications services provider when it seeks to expand into the local exchange area of another provider." Second, the PUC responds that Beaver Creek's reading of ORS 759.025(2) is erroneous, and that that provision simply functions "to grandfather in the intrastate telecommunications service provided by cooperatives as of 1986." Finally, the PUC reiterates its position that its interpretation of the term "competitive provider" in OAR 860-032-0010(4) and (5) is consistent with the requirement in section 253 of the Telecommunications Act that telecommunications services providers be afforded access to all markets, both interstate and intrastate, on a competitively neutral basis.

■■ Because this is a rule challenge pursuant to ORS 183.400, *Planned Parenthood Assn. v. Dept. of Human Res.*, 297 Or 562, 565, 687 P2d 785 (1984), frames our inquiry:

> "In the proper sequence of analyzing the legality of action taken by officials under delegated authority, the first question is whether the action fell within the reach of their authority, the question which in the case of courts is described as 'jurisdiction.' If that is not in issue * * * the question is whether the action was taken by procedures prescribed by statute or regulation. Assuming that proper procedures were followed, the next question is whether the substance of the action, though within the scope of the agency's or official's general authority, departed from a legal standard expressed or implied in the particular law being administered, or contravened some other applicable statute. These steps are designed to assure that the challenged action, particularly an action challenged for arguably violating constitutional rights, in fact was authorized by the state's or local government's politically accountable policy makers. Only if the action was clearly so authorized is there any reason to decide whether the state or local government has adopted a policy that the constitution forbids."

Here, Beaver Creek does not challenge the PUC's general authority to promulgate the challenged rules or the procedures by which those rules were adopted. Rather, Beaver Creek's fundamental argument is that "cooperatives are not within the statutory provisions of ORS 759.020" and that, consequently, OAR 860-032-0010(4) and (5) depart from

a legal standard expressed or implied in the statute being implemented.[7]

We return to the pertinent statutory provisions. ORS 759.020(1) provides:

> "No person, corporation, company, association of individuals or their lessees, trustees, or receivers shall provide intrastate telecommunications service on a for-hire basis without a certificate of authority issued by the Public Utility Commission under this section."

Thus, for cooperatives to fall under ORS 759.020, a cooperative must (1) constitute a "person, corporation, company, or association of individuals" and (2) provide intrastate telecommunications services on a "for-hire basis."

With respect to the first of those elements, the PUC argues that, at the first level of the *PGE* methodology, the "text-in-context" of ORS 759.020 establishes that the legislature intended that provision to cover all entities providing intrastate telecommunications services for hire, including cooperatives. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). The PUC further, and alternatively, asserts that, even if any uncertainty as to the statute's scope remains after completing the first level of the *PGE* analysis, legislative history is conclusive. We begin, thus, by considering whether a cooperative is a "person" as that term is used in ORS 759.020(1).

ORS 759.020 does not itself define "person." Nor does ORS 759.005, the omnibus definitional provision for chapter 759. However, ORS 756.010 does provide the following definition:

---

[7] Our review in that regard is "facial" and not "as applied." As the court emphasized in *AFSCME Local 2623 v. Dept. of Corrections*, 315 Or 74, 79, 843 P2d 409 (1992):

> "Aside from questions that might arise concerning the facts surrounding the process of adopting a rule—questions not raised in this case—judicial review under ORS 183.400 is limited to the face of the rule and the law pertinent to it. Numerous individual fact situations can arise under any rule, but judicial review of the rule as applied to each of those situations is reserved to other forums."

"As used in ORS chapter[ ] * * * 759, except as otherwise specifically provided or *unless the context requires otherwise*:

"* * * * *

"(5)    'Person' includes individuals, joint ventures, partnerships, corporations and associations or their officers, employees, agents, lessees, assignees, trustees or receivers." (Emphasis added.)

At first blush, that definition would seem instructive, and perhaps controlling. However, upon closer consideration, the "context"—*i.e.,* ORS 759.020 itself—"requires otherwise." That is so because, while ORS 756.010(5) defines "person" as *including* "corporations" and "associations," ORS 759.020(1) treats those entities as *distinct from* "persons": "no person, corporation, [or] * * * association of individuals * * *." Thus, "person" in ORS 759.020(1) necessarily has a different, more limited and contextually precise content than the omnibus ORS 756.010(5) definition.[8]

With no controlling statutory definition, we refer to the commonly understood meaning of "person." Arguably, pertinent definitions of "person" include "an individual human being" or "a human being, a body of persons, or a corporation, partnership, or other legal entity that is recognized by law as the subject of rights and duties." *Webster's Third New Int'l Dictionary*, 1686 (unabridged ed 1993). Under the first of those definitions, a cooperative obviously would not be a "person." If, however, "person" were construed consistently with the second definition as encompassing any "legal entity" in addition to those previously listed, a cooperative would be a "person" for purposes of ORS 759.020(1). The statutory context does not resolve that ambiguity. Also on the first level of

_____

[8] The same is true of the definition of "person" in ORS 759.500(2), which the PUC invokes as "highly pertinent context" for the term "person" in ORS 759.020(1). ORS 759.500(2) defines "person" for purposes of the territory allocation statutes to include "individuals, firms, partnerships, *corporations, associations,* cooperatives and municipalities, or their agent, lessee, trustee, or referee." (Emphasis added.) Indeed, because ORS 759.500(2) antedated ORS 759.020(1), it could be contextually implied, from the reference to "cooperatives" in ORS 759.500(2), that, when the legislature intends to refer to cooperatives specifically—as opposed to "corporations" and "associations"—it knows how to do so.

analysis, and before proceeding to legislative history, however, we consider whether cooperatives fall unambiguously within the three other operative terms: "corporation," "company," or "association of individuals."

The term "cooperative" is shorthand for "cooperative *corporation.*" *See* ORS 62.015(4) (as used in ORS chapter 62, " '[c]ooperative' means a cooperative corporation which is subject to the provisions of [ORS chapter 62]"); *but see* ORS 62.015(5) (as used in ORS chapter 62, " '[c]orporation' means a corporation which is not a cooperative"). In a technical sense, cooperatives are corporations. Like any other corporation, they are creatures of statute whose formation requires the filing articles of incorporation with the Secretary of State. ORS 62.511. The principal distinction between cooperatives and traditional corporations is that cooperatives are "primarily organized for the purpose of providing services and profits to its members and not for corporate profit." *See Black's Law Dictionary*, 342 (7th ed 1999). Thus, depending on whether the legislature in ORS 759.020(1) intended "corporation" to have the broader or the more particular connotation, either construction is plausible. Again, we perceive nothing in the statutory context that resolves that ambiguity.

"Company" is similarly—indeed almost innately—ambiguous. As commonly understood in the law, "company" could describe a corporation, association, partnership, or union. *Black's Law Dictionary* at 274. That definition is not so broad as to necessarily include cooperatives or so focused as to necessarily exclude them, and there are no contextual clues to resolve that ambiguity.

Finally, a cooperative is not an "association of individuals." An "association," as a legal term of art, refers to an "*unincorporated* business organization *that is not a legal entity* separate from the persons who compose it." *Black's Law Dictionary* at 119 (emphasis added). Thus, cooperatives, as recognized legal entities, are not "associations of individuals."

We proceed, then, to legislative history. That history does not definitively indicate that the legislature deemed a

cooperative to be, specifically, a "person," a "corporation," or a "company." However, the legislative history does establish, conclusively, that the legislature intended at least one of those terms to encompass cooperatives. The legislative history demonstrates that the legislature, in listing entities subject to ORS 759.020, intended to encompass *all entities* providing intrastate telecommunications services on a "for-hire" basis. For example, PUC Commissioner Gene Maudlin explained that the statute functioned to "require[ ] that *anyone* seeking to provide intrastate telecommunications service, as defined earlier, must have a certificate of authority" from the PUC. Testimony, Senate Committee on Business, Housing and Finance, HB 2200, May 30, 1985, Ex C at 5 (emphasis added). Similarly, Pat Hickey, testifying on behalf of AT&T, explained that House Bill 2200 "require[d] *any entity* wishing to provide intrastate telecommunications services" to obtain a certificate from the PUC. Testimony, Senate Committee on Business, Housing and Finance, HB 2200, May 30, 1985, Ex K at 2 (emphasis added). Given that legislative history, and given the plausibly inclusive definition of "person," "corporation," and "company" discussed above, cooperatives—whether as "person[s]," "corporation[s]," or "compan[ies]"—are subject to the requirements of ORS 759.020 except to the extent described in ORS 759.025(2).[9]

■    The issue, thus, narrows to whether cooperatives are providing intrastate telecommunications services on a "for-hire basis." ORS 759.020(1). In that regard, the PUC argues that the "for hire" limitation in ORS 759.020 means simply that a telecommunications services provider is providing those services for remuneration. In the PUC's view, cooperatives—even cooperatives providing service exclusively to their members—are providing service for remuneration, and are thus providing service "for hire." We agree.

---

[9] The significance of ORS 759.025(2) and its interplay with ORS 759.020 is discussed below, 182 Or App at 573, and in the companion contested case review, *Beaver Creek Coop.*, 182 Or App at 576, 581-87.

The term "for hire" is not defined in ORS chapter 759.[10] In common usage, "for hire" means "available or offered for rent." *Webster's Third New Int'l Dictionary* at 892; *see also id.* at 1072 (defining "hire" and describing the phrase "for hire" to mean "available for use or service in return for payment"). Thus, as a matter of common usage, a cooperative is providing telecommunication service on a "for-hire basis" if it provides those services in exchange for payment.

Beaver Creek does not dispute that cooperatives— even cooperatives serving only their own members—receive payment for their services. Rather, Beaver Creek argues that "for hire" is a term of art referring to the provision of services to the *public*—and that cooperatives providing services exclusively to their *members* are not providing service to the *public*. At the most basic level, Beaver Creek's argument is that, if it extends service to new consumers in competition with other providers, those new consumers, as "members" of the cooperative, are not the "public." Thus, Beaver Creek reasons, to the extent that it receives compensation for those new "members," those payments cannot render Beaver Creek's provision of services "for hire"—and the PUC's attempt to regulate that extension of service under OAR 860-032-0010(4) and (5) is necessarily *ultra vires* because ORS 759.020(1)'s "for hire" prerequisite is not satisfied.

■     Beaver Creek's argument is unavailing. Even assuming that common-law public utility terms of art can properly be considered at the first level of the *PGE* analysis, terms of art must, in general, be "well-established" to be acknowledged in the statutory construction context. *See McIntire v. Forbes*, 322 Or 426, 431, 909 P2d 846 (1996)

---

[10] The term "for-hire carrier" is defined in ORS 825.005(7) (pertaining to motor carriers), but that definition is circular, clearly applies in a context other than the one at issue here, and does nothing to clarify the meaning of the term "for hire." In all events, the definition of "for-hire carrier" in ORS 825.005(7) cannot properly be considered "context" for the term "for hire" in ORS 759.020 because it was adopted by the legislature in 1995, *see* Or Laws 1995, ch 306, § 4, well after the adoption of ORS 759.020 by the 1985 Legislative Assembly. *Gaston v. Parsons*, 318 Or 247, 254, 864 P2d 1319 (1994) ("The legislature's understanding of the word[s it uses] at the time th[e] statute was adopted is dispositive, unless subsequent amendments have altered that meaning.").

("Analysis of text also includes reference to well-established legal meanings for terms that the legislature has used.").

The term "for hire" is not "well-established" as a term of art in the utility field. No Oregon case has defined that term in this context, and cases from other jurisdictions yield diverse definitions. As used in those cases, "for hire" could mean, variously, "for compensation,"[11] "as a business for profit,"[12] or simply "available for rent."[13] There is no single "well-established" definition of "for hire" in the public utility context.

We return, then, to the meaning of "for hire" in common usage: "Available for use or service in return for payment." Under that plain meaning definition, cooperatives do provide telecommunications service to their members "for hire" because they receive some remuneration for those services. Nothing in the statutory context of ORS 759.020 detracts from that understanding. Thus, cooperatives fall within the broad ambit of ORS 759.020(1) and are subject to that statute's certification requirement.

Beaver Creek argues, nevertheless, that, even if cooperatives might otherwise seem to be encompassed within ORS 759.020, they are not, because the more precise provisions of ORS 759.025(2)—which, unlike ORS 759.020 *do*

---

[11] *See, e.g., City of Bayard v. North Central Gas Company,* 164 Neb 819, 868, 83 NW2d 861 (1957) (a "carrier for hire" is one who receives, or is entitled to receive, "any recompense for his services") (quoting *Citizens Bank v. Nantucket Steamboat Co.,* 5 F Cas 719, 725 (1811)); *People v. Orange County Farmers' & Merchants' Ass'n,* 204 P 873 (Cal Dist Ct App 1922) (suggesting that an organization or association providing service at cost to its members is not providing services "for compensation").

[12] *See, e.g., State ex rel. Buffum Telephone Co. v. Public Service Commission,* 272 Mo 627, 199 SW 962, 965 (1917) (interpreting phrase "conduct telephonic communications for hire" to describe entities "which engage in business as a commercial transaction, or for profit"); *State v. Southern Elkhorn Telephone Co.,* 106 Neb 342, 183 NW 562, 565 (1921) (because organization rendered no service, made no profit, and exacted no compensation, it was not a "telephone company engaged in the transmission of messages for hire"); *Limestone Rural Telephone Co. v. Best,* 56 Okla 85, 155 P 901, 902-03 (1916) ("mutual company" operating not for the purpose of profit but for the mutual convenience of its members, is not operating "for hire" and is not a regulated public service corporation).

[13] *See, e.g., State ex rel. Buffum Telephone Co.,* 199 SW at 965 (member-owned telephone company not operating "for hire" because "it lets nothing; it hires nothing; but for the maintenance of its own property, and for that alone, it exacts a like sum quarterly from all of its members").

refer explicitly to cooperatives—control. That argument misapprehends the function of ORS 759.025(2) in the context of the entire statutory scheme. ORS 759.025(2) provides:

> "Notwithstanding any other provision of law, the commission shall issue to any cooperative corporation, or unincorporated association providing intrastate telecommunications service on January 1, 1986, a certificate of authority to continue to provide those services on and after January 1, 1986. Such actions shall not subject such cooperative corporations or association to the commission's general powers of regulation."

As we explain in the companion case, *Beaver Creek Coop. Telephone Co. v. PUC (A112862)*, 182 Or App 576, 581-87, 50 P3d 1240 (2002), ORS 759.025(2), on its face, functions solely as a "grandfathering" provision; *i.e.*, it effectively "certifies" the intrastate telecommunications services provided by cooperatives *as of January 1, 1986*. Thus, that statute has no prospective application, and does not preclude the application of ORS .759.020's certification scheme to cooperatives generally. Rather, it simply permits cooperatives providing intrastate telecommunications services as of January 1, 1986, to obtain a certificate of authority to "continue to provide those services," thus ensuring that cooperatives that cannot be categorized as either a "telecommunications utility" or a "competitive telecommunications services provider" can nevertheless obtain a certificate of authority from the PUC. In short, ORS 759.025(2) supplements, rather than supersedes, ORS 759.020 with respect to cooperatives. It supplements ORS 759.020 by prescribing certificates for services provided by cooperatives as of January 1, 1986 (the same effective date of ORS 759.020), but does not supersede the application of ORS 759.020's certification requirement to any expansion of service by cooperatives after that date.

■     We thus conclude that cooperatives seeking to expand their services into the boundaries of the local exchanges of other telecommunications services providers are subject to the certification requirements of ORS 759.020. Consequently, OAR 860-032-0010(4) and (5) are not *ultra vires*.

■ Finally, in challenging OAR 860-032-0010(4) and (5), Beaver Creek makes two federal preemption arguments based on section 253 of the Telecommunications Act of 1996. In the first of those arguments, Beaver Creek challenges the PUC's assertion below that section 253 requires that cooperatives be subjected to the same certification scheme as other telecommunications services providers. Alternatively, Beaver Creek argues that the territory allocation statutes, ORS 759.500 to ORS 759.570, to which the PUC referred in its order adopting the proposed rules, are preempted by the Telecommunications Act, and that, consequently, OAR 860-032-0010(4) and (5) are invalid.

As noted, 182 Or App at 566-67, the scope of our review in this rule challenge is established by ORS 183.400, which provides, in relevant part:

"(3)   Judicial review of a rule shall be limited to an examination of:

"(a)   The rule under review;

"(b)   The statutory provisions authorizing the rule; and ·

"(c)   Copies of all documents necessary to demonstrate compliance with applicable rulemaking procedures.

"(4)   The court shall declare the rule invalid only if it finds that the rule:

"(a)   Violates constitutional provisions;

"(b)   Exceeds the statutory authority of the agency; or

"(c)   Was adopted without compliance with applicable rulemaking procedures."

As to Beaver Creek's first argument, even if Beaver Creek is correct that federal law does not *require* the challenged rules, that fact would be immaterial to whether the PUC was *authorized* under Oregon law to promulgate the rules and whether it validly did so. *See* ORS 183.400(4). As to Beaver Creek's challenge concerning the territory allocation statutes, the PUC referred to those statutes, including particularly ORS 759.500(2), simply as contextual support for its conclusion that cooperatives are subject to ORS 759.020.[14] As

---

[14] *See* 182 Or App at 564 n 5.

discussed above, OAR 860-032-0010(4) and (5) are wholly authorized by ORS 759.020. They in no way depend on the territory allocation statutes. *See* ORS 183.400(3), (4). Accordingly, we reject Beaver Creek's preemption arguments. OAR 860-032-0010(4) and (5) are valid.

■    We turn, finally, to Beaver Creek's challenge to the third disputed rule, OAR 860-032-0007(15), which requires all certificate of authority holders to "pay all Commission taxes, fees, or assessments adopted pursuant to Oregon law or Commission rules, orders, tariffs or price lists." Again, Beaver Creek argues that the PUC exceeded its statutory authority in promulgating that rule. We disagree.

The PUC's general authority to adopt and assess fees is established in ORS 756.310, which gives the PUC authority to assess fees on "telecommunications providers." "Telecommunications provider" is defined in ORS 756.310(8)(c) to include "any entity that is a telecommunications utility *or a competitive telecommunications provider as defined by ORS 759.005.*" (Emphasis added.) As discussed above, the PUC acted within its statutory authority when it classified cooperatives providing intrastate telecommunications services outside their local exchange areas as competitive telecommunications providers. Consequently, such cooperatives are subject to fees pursuant to ORS 756.310. The PUC acted within its authority under ORS 756.310 in adopting OAR 860-032-0007(15).[15]

OAR 860-032-0010(4), 860-032-0010(5), and 860-032-0007(15) held valid.

---

[15] We note, parenthetically, that Beaver Creek's only challenge to OAR 860-032-0007(15) is that the PUC has no authority under ORS 759.020 to treat cooperatives as competitive providers and that, consequently, it necessarily follows that OAR 860-032-0007(15) is invalid: "The litmus test for whether the Commission can apply OAR 860-032-0007(15) to a cooperative is whether the Commission's analysis that it can force a cooperative to obtain a certificate under ORS 759.020 is correct." Thus, Beaver Creek does not argue that OAR 860-032-0007(15) is invalid because, even if it might be lawfully applied to some cooperatives, it impermissibly purports to apply to cooperatives that continue to operate only within their allocated territories. We decline to speculate as to the abstract merit of that unpreserved argument.