Argued and submitted March 5, affirmed July 17, 2002

# BEAVER CREEK COOPERATIVE
# TELEPHONE COMPANY,
an Oregon cooperative corporation,
*Appellant,*

*v.*

# PUBLIC UTILITY COMMISSION OF OREGON;
Ron Eachus, Chairman,
in his capacity as a Commissioner
of the Public Utility Commission of Oregon;
Roger Hamilton,
in his capacity as a Commissioner
of the Public Utility Commission of Oregon;
and Joan H. Smith,
in her capacity as a Commissioner
of the Public Utility Commission of Oregon,
*Respondents.*

00C-16528; A112862

50 P3d 1240

Richard A. Finnigan argued the cause and filed the briefs for appellant.

Jas. Jeffrey Adams, Assistant Attorney General, argued the cause for respondents. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Beaver Creek Cooperative Telephone Company (Beaver Creek) appeals from a judgment upholding the Public Utility Commission's (PUC) denial of Beaver Creek's petition to expand the territory covered by its certificate of authority issued pursuant to ORS 759.025(2). We affirm.[1]

The facts are undisputed. Beaver Creek is a cooperative corporation organized pursuant to ORS chapter 62 that provides telecommunications services to its members. In 1985, the legislature passed House Bill 2200, which, *inter alia*, created a mechanism by which telecommunications services providers operating on a "for-hire basis" could obtain a certificate of authority from the PUC to operate as either a "telecommunications utility" or a "competitive telecommunications services provider." *See* Or Laws 1985, ch 550, § 6.[2] After the passage of House Bill 2200, the PUC sent a letter to cooperatives stating that, because cooperatives fell outside the general jurisdiction of the PUC, they could obtain a certificate of authority under House Bill 2200 only if they were providing service to nonmembers. In response, the cooperatives sponsored, and the 1987 Legislative Assembly passed, what today is ORS 759.025(2). Or Laws 1987, ch 302, § 1. That statute provides:

> "Notwithstanding any other provision of law, the commission shall issue to any cooperative corporation, or unincorporated association providing intrastate telecommunications service on January 1, 1986, a certificate of authority to continue to provide those services on and after January 1, 1986. Such actions shall not subject such cooperative corporations or association to the commission's general powers of regulation."

---

[1] Central to the PUC's decision in this contested case was its reliance on OAR 860-032-0010(4). The validity of that rule is addressed in *Beaver Creek Coop. Telephone Co. v. PUC (A109890)*, 182 Or App 559, 50 P3d 1231 (2002).

[2] That provision is codified today at ORS 759.020, which provides, in part:

> "(1) No person, corporation, company, association of individuals or their lessees, trustees, or receivers shall provide intrastate telecommunications service on a for-hire basis without a certificate of authority issued by the Public Utility Commission under this section."

Shortly thereafter, in December 1987, Beaver Creek filed an application with the PUC to obtain a certificate of authority under what is now ORS 759.025(2). In that proceeding, docketed as UM 177, the PUC issued Beaver Creek its requested certificate of authority.

In 1996, Congress passed the Telecommunications Act of 1996, which mandated that intrastate telecommunications markets be opened for competition. *See, e.g.*, 47 USC § 253(a) (Supp 2001) (preempting state or local provisions that prohibit or have the effect of prohibiting the competitive provision of telecommunications services). In response to that legislation, Beaver Creek decided to expand its service area to include customers outside the territory covered by its UM 177 certificate of authority. To accomplish that goal, in 1996 Beaver Creek sought and obtained a certificate of authority as a competitive provider under *ORS 759.020*—not ORS 759.025(2)—to serve portions of the Oregon City exchange already served by US West Communications (US West).

Subsequently, Beaver Creek apparently became concerned that its status as a competitive provider under ORS 759.020 might jeopardize the tax benefits it enjoyed as a cooperative. Consequently, in April 2000, Beaver Creek filed a petition with the PUC to reopen the UM 177 proceeding and amend its original certificate of authority under ORS 759.025(2) to include the portions of the Oregon City exchange that it was already serving as a competitive provider under ORS 759.020. After Beaver Creek filed its petition, but before the PUC issued its final order, the PUC—in a separate rulemaking proceeding—adopted new rules that, *inter alia*, provided that any cooperative seeking to provide intrastate telecommunications services in an area already served by another provider could do so only as a "competitive provider" pursuant to ORS 759.020. *See, e.g.*, OAR 860-032-0010(4).[3]

---

[3] OAR 860-032-0010(4) provides:

"Local exchange telecommunications service provided by a telecommunications utility *or a cooperative* within the boundaries of local exchanges belonging to another telecommunications utility *or cooperative*, which exchanges are defined pursuant to ORS 759.005(2)(c), shall be considered the operations of a

Thereafter, the PUC, relying in part on the newly promulgated OAR 860-032-0010(4), denied Beaver Creek's application in this proceeding. In particular, the PUC denied Beaver Creek's requested relief on the ground that, because Beaver Creek was seeking to provide intrastate telecommunications services in territory served by US West, ORS 759.025(2) was inapplicable. Rather, under the newly promulgated OAR 860-032-0010(4), the only way Beaver Creek could serve that territory was as a competitive provider pursuant to its certificate of authority under ORS 759.020.

Beaver Creek challenged the PUC's denial pursuant to ORS 756.580, which provides that parties aggrieved by a PUC order may challenge that determination in circuit court. The circuit court affirmed the PUC's order, and Beaver Creek appeals under ORS 756.610.

On appeal, Beaver Creek argues that, as a matter of law, it is entitled to a revised certificate under ORS 759.025(2) to serve its new members. Alternatively, Beaver Creek argues that the PUC has no statutory authority to require any cooperative seeking to provide intrastate telecommunications services in the local exchange area of another local exchange provider to obtain a certificate of authority under ORS 759.020.[4] Finally, Beaver Creek argues that the PUC's determination that the certification requirements of ORS 759.020 apply to cooperatives is precluded by federal preemption under Section 253 of the Telecommunications Act of 1996. That is so, Beaver Creek asserts, because: (1) the PUC erroneously relied on the territory allocation statutes, ORS 759.500 to ORS 759.570, in rejecting Beaver Creek's application; and (2) the effect of the PUC's order is to require Beaver Creek to obtain certificates of authority under both ORS 759.020 and ORS 759.025—thus giving rise to an impermissible barrier to entry.

---

competitive provider, and may only be provided pursuant to a certificate of authority granted by the Commission under ORS 759.020. Such service shall be considered operations of a competitive provider without regard to the manner the provider treats those operations." (Emphasis added.)

[4] Beaver Creek advanced the same argument in the related rule challenge case. As described below, 182 Or App at 587-88, we reject that argument for the same reasons described in our opinion in the companion case. See *Beaver Creek Coop.*, 182 Or App 559.

■ In addressing Beaver Creek's assignments of error, we review the PUC's order itself, not the circuit court's judgment. *Utility Reform Project v. PUC*, 171 Or App 349, 353, 16 P3d 516 (2000). We begin by addressing Beaver Creek's argument that it has a statutory entitlement to amend its certificate of authority issued under ORS 759.025(2).

ORS 759.025 provides:

"(1) Notwithstanding ORS 759.020, the Public Utility Commission shall issue to any person, company or corporation providing intrastate telecommunications services that are subject to regulation by the commission on January 1, 1986, a certificate of authority to continue to provide those services on and after January 1, 1986.

"(2) Notwithstanding any other provision of law, the commission shall issue to any cooperative corporation, or unincorporated association providing intrastate telecommunications service on January 1, 1986, a certificate of authority to continue to provide those services on and after January 1, 1986. Such actions shall not subject such cooperative corporations or association to the commission's general powers of regulation."

The PUC acknowledges that Beaver Creek was entitled, under ORS 759.025(2), to the issuance of the original UM 177 certificate of authority. However, the PUC argues that, by the terms of ORS 759.025(2), the scope of any certificate under that statute is necessarily limited to the services provided by Beaver Creek in the territory it was serving as of January 1, 1986. Given that limited scope, the PUC argues, Beaver Creek has no statutory entitlement under ORS 759.025(2) to an amended certificate authorizing it to serve territory that it was not serving as of January 1, 1986. Rather, in the PUC's view, when a cooperative seeks to expand beyond its original "grandfathered" territory to compete with another local exchange telecommunications provider, it can do so only under ORS 759.020.

Beaver Creek's response is twofold. First, Beaver Creek asserts that ORS 759.025(2) is not a "grandfathering" provision at all. That is, in Beaver Creek's view, that statute applies *prospectively*, to require issuance of a certificate authorizing a cooperative's expansion or extension of service

occurring after January 1, 1986—and not merely retroactively, to confirm the *status quo* as of that date. Second, and alternatively, Beaver Creek argues that, even if ORS 759.025(2) is merely a "grandfathering" provision, it "grandfathers" the nature or type of service provided by Beaver Creek as of January 1, 1986. Thus, in Beaver Creek's view, even if a telecommunications cooperative seeks to expand into new territory, so long as it continues to offer the same species of "services" to consumers that it did as of January 1, 1986, the PUC is obligated under ORS 759.025(2) to issue a certificate authorizing that territorial expansion. Beaver Creek contends that the "services" it is providing now—intrastate telecommunications services, albeit to a larger territory—is no different from the "services" it was providing in 1986. Consequently, Beaver Creek reasons, the PUC must ministerially revise Beaver Creek's certificate of authority under ORS 759.025(2) to include its expanded service territory.

■       The dispute, as ably framed by the parties, is complex. But the ultimate question is clear: Is Beaver Creek entitled to an amended certificate of authority under ORS 759.025(2) because, although it seeks to expand into new territories that it was not serving as of January 1, 1986, the nature of the services it seeks to provide is essentially the same that it provided on January 1, 1986? We agree with the PUC that Beaver Creek has no such entitlement under ORS 759.025(2).

Our conclusion in that regard rests on our interpretation of ORS 759.025(2)—and, particularly, the operative phrase that the PUC shall issue to a cooperative a certificate of authority to "continue to provide those services" that it was providing on January 1, 1986. Nothing in ORS chapter 759 defines the phrase "those services" or, more narrowly, the term "service" for purposes of ORS 759.025. However, ORS 756.010 provides the following omnibus definition of "service":

"As used in ORS chapter[ ] * * * 759, except as otherwise specifically provided or *unless the context requires otherwise*:

"* * * * *

"(8) 'Service' is used in its broadest and most inclusive sense and includes equipment and facilities related to providing the service or the product served." (Emphasis added.)

That definition is not particularly instructive for several reasons. First, it is innately vague; "service is used in its broadest and most inclusive sense." At the very least, it *"includes"* "equipment and facilities relating to the provision of *the* service" (again that problematic circularity)—but even that depends on context ("unless the context requires otherwise"). Thus, if that definition is applicable to ORS 759.025(2), "services" in that statute encompasses, at least, Beaver Creek's transmission "equipment and facilities" that existed as of January 1, 1986, or, at most, depending on context, something much more. In sum, the omnibus definition is open-ended, contextually flexible, and ultimately ambiguous.

Not surprisingly, resort to "plain meaning" or "common understanding" supports several plausible meanings of "service" or "services." The noun "service," as a matter of common usage, describes

"action or use that furthers some end or purpose : conduct or performance that assists or benefits someone or something : deeds useful or instrumental toward some object[;] * * * useful labor that does not produce a tangible commodity—usu. used in pl. ‹railroads, telephone companies, and physicians perform ~s although they produce no goods›[; or] the provision, organization, or apparatus for conducting a public utility or meeting a general demand ‹telephone ~› ‹air freight ~›." *Webster's Third New Int'l Dictionary*, 2075 (unabridged ed 1993).[5]

Under those somewhat amorphous definitions, "services" in the telecommunications context could plausibly connote or encompass various permutations of *what* the cooperative provides (the ability to communicate by telephone), *how* it is provided (by access to transmission facilities and, at least arguably, by the cooperative's creation and maintenance of those facilities), and/or *where* or *to whom* it is provided (the territory or population to whom access is, or must, be provided).

---

[5] In common usage, "services" has no distinct meaning other than as a plural of "service." *Webster's Third New Int'l Dictionary*, 2076 (unabridged ed 1993).

Thus, "plain meaning" could plausibly support either Beaver Creek's broader view of "service" or the PUC's territorially limited reading of that term, as it is used in ORS 759.025(2).

■       Proceeding still on *PGE*'s "first level,"[6] we consider statutory context. The most obvious statutory parallel to ORS 759.025(2)—and ultimately the most revealing contextual clue to its meaning—is ORS 759.025(1). Again, that statute provides:

> "Notwithstanding ORS 759.020, the Public Utility Commission shall issue to any person, company or corporation providing intrastate telecommunications services that are subject to regulation by the commission on January 1, 1986, a certificate of authority to continue to provide those services on or after January 1, 1986."

Thus, that subsection closely parallels subsection (2), except that it applies to "any person, company or corporation * * * subject to [PUC] regulation," while subsection (2) refers to "any cooperative corporation, or unincorporated association." Both provisions include identical "continue to provide those services" language. Given the presumption that the legislature intended closely related provisions to have the same meaning, *Sweeney v. SMC Corp.*, 178 Or App 576, 587, 37 P3d 244 (2002) ("The ordinary presumption is that the same language, when used in related statutes, has the same meaning."), construing "continue to provide those services" in subsection (1) should guide our understanding of subsection (2).

It is important, at the outset, to emphasize two predicates. *First*, subsection (1) and subsection (2) were not enacted at the same time. Rather, subsection (1) was enacted in 1985 and subsection (2) was enacted in 1987. Or Laws 1985, ch 550, § 6a; Or Laws 1987, ch 302, § 1. Subsection (2) was, in fact, modeled on subsection (1). *Second*, subsection (1) and ORS 759.020 were enacted as part of the same legislation, House Bill 2200, the original certificate of authority legislation.[7]

---

[6] *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993).

[7] The present ORS 759.025(1) was section 6a of House Bill 2200 (1985). The present ORS 759.020 was section 6 of the same bill.

With that historical context, it is apparent that ORS 759.020 and ORS 759.025(1) were complementary provisions—and, certainly, the certification provisions of the latter, tied to a "benchmark" of January 1, 1986, were not intended to abrogate or supersede the broader certificate requirements of the former.[8] Given that legislative framework, it becomes contextually apparent that, at least with respect to subsection (1), "services" cannot have the same broad meaning that Beaver Creek would ascribe to the same term in subsection (2). If, as Beaver Creek contends, "services" means merely, and broadly, the *nature* of what is provided, *viz.*, "intrastate telecommunications services," then ORS 759.020 would become a nullity. That is so because any time a person, company, or corporation that had provided those "services" as of January 1, 1986, sought to expand into new territories, it would be automatically entitled under ORS 759.025(1) to issuance of an amended certificate because it would be merely "continu[ing] to provide those services," albeit in a new or expanded territory.

Context thus establishes that whatever "services" means in subsection (1), it cannot have the same broad meaning that Beaver Creek espouses with respect to the same term in subsection (2). Conversely, context does not foreclose—and may implicitly support—the PUC's contention that the term is territorially circumscribed. Still, context is hardly decisive.

Legislative history is. As noted, the provision currently codified at ORS 759.025(2) was added in 1987 with the passage of House Bill 2655, which was proposed at the request of the Oregon Independent Telephone Association (OITA). Appearing in support of House Bill 2655 (1987), Maurice Astley, OITA's executive vice president, described

---

[8] For example, ORS 759.020(3) functions to limit the provision of services *"within the local exchange telecommunications service area* of a telecommunications utility" while ORS 759.020(4) authorizes the PUC to certify service *"in the local exchange telecommunications service area* of a telecommunications utility" if the public interest so requires. (Emphasis added.) *See also* ORS 759.005(2)(c) (defining "local exchange telecommunications service" as "telecommunications service within the *boundaries of exchange maps* filed with and approved by the Commission").

the purpose and scope of the cooperative grandfathering provision:

> "After reviewing House Bill 2200, the Attorney General's office determined that cooperatives really should not be regulated. And so 10 of the 11 who had voluntarily regulated themselves were removed from regulation. One co-op not being regulated at all has never been. We decided that one of the problems that came out of that review is that existing telephone companies were supposed to be grandfathered—*to be given a certificate of authority to operate their territory which has been allocated to them*, and the Commission said, 'Well, you don't get the certificate because you aren't under 2200.'
>
> "So they have a territory allocated to them just like any telephone company, but they don't have the certificate. So we introduced the bill mainly to do that for them[.]" Tape recording, House Environment and Energy Committee, HB 2655, April 3, 1987, Tape 83, Side B (emphasis added).

Representative Ron Eachus gave similar testimony before the Senate Business, Housing, and Finance Committee:

> "HB 2655 is a result of a review of HB 2200 which was passed last session. The Commissioner ruled that cooperatives were not regulated utilities and therefore the process of certification and classification did not apply to them. The cooperatives requested that there are cases in which they did want to be covered by the PUC. The first is they wanted to be involved in the certification process. *They have allocated territories but without being in the certification process they are not officially certified to operate in those territories.* Just as a protection, they wanted to go through the certification process so it would be recognized that they were authorized to *operate in their allocated territories.*" Tape recording, Senate Business, Housing, and Finance Committee, HB 2655, May 21, 1987, Tape 99, Side B (emphasis added).[9]

---

[9] Representative Eachus's comments comported with his remarks pertaining to the scope of ORS 759.025(1). As the chief sponsor of 1985 House Bill 2200, Eachus testified that section 6a of that bill, now codified at ORS 759.025(1):

"[E]*ssentially grandfathers in the existing service areas of the public utilities.* The way the bill is written now, as of a certain date you can apply for a certificate of authority, but there is no requirement that the authority be more or less than the area of your existing local exchange, and it is entirely possible under

That testimony by Eachus and Astley reveals the scope of the "grandfathering" allowance. In particular, the emphasis in those remarks on the need for cooperatives' authorization to "operate in their allocated territories" demonstrates that the purpose and intent of the phrase "continue to provide those services"—and of ORS 759.025(2) generally—was to retroactively authorize cooperatives' provision of services within their existing "allocated territory" as of January 1, 1986. In sum, Beaver Creek's present effort to divorce its provision of service in 1986 from the geographic constraints on that service is contrary to the legislative intent, and effect, of ORS 759.025(2). Thus, Beaver Creek cannot amend its original UM 177 certificate of authority issued under ORS 759.025(2), and the PUC properly denied Beaver Creek's application.

Beaver Creek next argues, in a related sense, that the PUC erred in relying on OAR 860-032-0010(4) in rejecting its application because that rule is *ultra vires*. We reject that argument for the same reasons described in the related rule challenge case. *See Beaver Creek Coop. Telephone Co. v. PUC (A109890)*, 182 Or App 559, 50 P3d 1231 (2002).

Finally, Beaver Creek argues that the PUC's denial of its application for an amended certificate runs afoul of section 253 of the federal Telecommunications Act of 1996, 47 USC section 253.[10] In that regard, Beaver Creek makes two related arguments. First, Beaver Creek argues that the PUC's reliance on the territory allocation statutes, ORS 759.500 to ORS 759.570, in rejecting its application, was

---

the law [in its current] open ended [status] that you would have all the utilities competing against each other for different areas. And this just simply states that, when this occurs, it will occur on the basis of the existing local exchange areas, rather than competing in that case." Tape recording, House Environment and Energy Committee, HB 2200, March 13, 1985, Tape 108, Side A (emphasis added).

[10] 47 USC section 253 provides, in relevant part:

"(a) No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.

"(b) Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 of this section, requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers."

impermissible because those statutes are preempted by section 253. Alternatively, Beaver Creek argues that the effect of the PUC's order is to require Beaver Creek to obtain two certificates—a requirement which, Beaver Creek contends, constitutes an impermissible barrier to entry under section 253.

Both of those arguments are unavailing. As we understand Beaver Creek's first argument, it asserts: (1) The territory allocation statutes purport to give any entity possessing an allocation of exclusive territory the right to exclude competitors from its allocated territory. ORS 759.550(2). (2) Section 253 precludes any state from adopting a statute that "may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate communications service." 47 USC § 253(a). (3) Consequently, the territory allocation statutes are preempted by federal law, and the PUC's reliance on those statutes in rejecting Beaver Creek's present application is impermissible.

In that context, at least, that argument misses the mark. The ultimate issue in this case was whether Beaver Creek was entitled to issuance of an amended certificate under *ORS 759.025(2)*. Regardless of whether section 253 preempts some other provisions of Oregon law, that cannot alter the fact that—for the reasons described above—ORS 759.025(2) does not authorize the relief that Beaver Creek seeks.

4.      Beaver Creek's argument that the PUC's ruling somehow erects an impermissible barrier to entry for cooperatives is similarly unpersuasive. First, that argument proceeds from the same false premise, *viz.*, that Beaver Creek would be entitled to an amended certificate of authority under ORS 759.025(2) but for the territory allocation statutes and the application of ORS 759.020. Further, Beaver Creek does not argue that either ORS 759.020 or OAR 860-032-0010(4) expressly prohibits the competitive provision of intrastate telecommunications services by cooperatives; rather, Beaver Creek's argument, implicitly, is that the *effect* of applying those provisions is impermissible.[11] However,

---

[11] Before the PUC, Beaver Creek argued that, "[b]y artificially requiring a cooperative to divide its operations, the Commission is imposing increased

such an effects-based argument under section 253 must be supported by credible and probative evidence that the application of state or local law does, in fact, substantially impair or preclude the competitive provision of services. *AT&T Communications v. City of Eugene*, 177 Or App 379, 411, 35 P3d 1029 (2001). Here, Beaver Creek has offered no such evidence.[12] Accordingly, its preemption attacks fail.

The PUC correctly rejected Beaver Creek's application to amend its certificate of authority under ORS 759.025(2) to include areas served by other local exchange telecommunications services providers and not served by Beaver Creek as of January 1, 1986.

Affirmed.

---

operating costs on Beaver Creek." On appeal, Beaver Creek similarly argues that the PUC's rule requiring cooperatives to obtain certificates of authority as competitive providers under ORS 759.020 creates an impermissible barrier to entry.

[12] Indeed, this is not a case in which the PUC declined to issue a certificate under ORS 759.020. As noted, 182 Or App at 579, the PUC has issued a certificate to Beaver Creek under ORS 759.020. Rather, Beaver Creek's complaint, which apparently springs from potential adverse tax consequences, *see* 182 Or App at 579, is that is should be permitted to expand its service area pursuant to an amendment of its original UM 177 certificate under ORS 759.025(2), rather than pursuant to the ORS 759.020 certificate.