Argued and submitted October 5, 1999, affirmed January 9, 2002

William SWEENEY
and Susan Sweeney,
*Respondents,*

*v.*

SMC CORPORATION,
an Oregon corporation,
*Appellant,*

*and*

ROMANIA RV CENTER, INC.,
an Oregon corporation,
*Defendant.*

97-CV-0022-ST; A103085

37 P3d 244

Jacob Tanzer argued the cause for appellant. With him on the briefs were Steven C. Berman and Ball Janik LLP.

Steven D. Bryant argued the cause for respondent. With him on the brief was Bryant, Emerson & Fitch.

Before Landau, Presiding Judge, and Deits, Chief Judge,* and Linder, Judge.

LINDER, J.

---

* Deits, C. J., *vice* De Muniz, J., resigned.

**LINDER, J.**

Defendant SMC Corporation appeals from a judgment under ORS 646.315 to ORS 646.375, Oregon's "Lemon Law," based on a jury's finding that defendant had breached the express warranties on a motor home that it sold to plaintiffs. The jury awarded a refund of the purchase price of the vehicle in an amount that totaled $202,000. Pursuant to ORS 646.359 (1997), the trial court tripled that amount before entering judgment and also awarded plaintiffs their attorney fees. On appeal, the issues are whether the Lemon Law applies to motor homes and whether plaintiffs are entitled to triple damages. We affirm.

In 1996, plaintiffs bought a motor home from defendant, paying $188,000. Soon after buying the motor home they discovered a number of alleged defects, both in the vehicle's mechanical operation and in the living facilities that it contained. Among other things, plaintiffs complained about the steering, transmission, air conditioning, appliances, and water pressure and about a "chemical odor" that caused nose and eye irritation, breathing difficulties, and headaches. Defendant attempted to repair those alleged defects but did not do so to plaintiffs' satisfaction. During the first five months that plaintiffs owned the motor home, it spent more than 120 days in repair facilities.

Plaintiffs filed this action, asserting a claim under the Lemon Law together with claims for breach of express and implied warranties under both state and federal law. Before trial, defendant moved for partial summary judgment on the ground that the Lemon Law does not apply to motor homes; the trial court denied that motion. At trial, the jury awarded plaintiffs damages under the Lemon Law that consisted of the purchase price of $188,000 and $14,000 for taxes, license, and registration fees.[1] The jury also awarded plaintiffs an identical amount—that is, $188,000—on their warranty claims. In accordance with ORS 646.359 (1997),[2]

---

[1] Under ORS 646.335(1), the manufacturer's obligation is either to replace the vehicle with a new vehicle or to accept return of the vehicle and to refund to the plaintiff "the full purchase or lease price paid, including taxes, license and registration fees * * *, less a reasonable allowance for the consumer's use of the vehicle."

[2] Although it is not relevant to this case, we note that in 1999 the legislature placed a cap of $50,000 on awards of triple damages under ORS 646.359. Or Laws 1999, ch 346, § 1.

the court tripled the Lemon Law damages and entered judgment for $606,000, together with plaintiffs' attorney fees, costs, and disbursements. Because the verdict under the warranty claims duplicated the purchase price refund under the Lemon Law, the court did not separately enter judgment for that amount.

On appeal, defendant first renews its position that the Lemon Law does not apply to motor homes, arguing that a motor home does not meet the law's definition of "motor vehicle."[3] ORS 646.325 provides a remedy to a consumer if a "new motor vehicle does not conform to applicable manufacturer's express warranties" and if the consumer complies with certain procedural requirements. Thus, the purchase of a new motor vehicle is a predicate to a Lemon Law claim. ORS 646.315(2) defines a "[m]otor vehicle" as "a *passenger* motor vehicle as defined in ORS 801.360 that is sold in this state." (Emphasis added.) Significantly, ORS 801.360, to which ORS 646.315(2) refers, does not define "passenger motor vehicle." Rather, it defines only the term "[m]otor vehicle," describing it as "a vehicle that is self-propelled or designed for self-propulsion."

This issue turns on the significance of the legislature's choice to add the term "passenger" to the definition of motor vehicle in the Lemon Law. In determining what that adds to the term's meaning under ORS 646.315, we begin with the statute's text. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). The relevant dictionary definitions of "passenger" are helpful in that respect. Those definitions include "a traveler in a public conveyance (as a train, bus, airplane, or ship)," "one who is carried in a private conveyance (as an automobile) for compensation or expected benefit to the owner," and "a rider in an automobile." *Webster's Third New Int'l Dictionary*, 1650 (unabridged ed 1993). As a federal court noted some years ago, "in common parlance [passenger] means an occupant of a motor vehicle other than the person operating it[.]" *Vogrin*

---

[3]. Because the issue presented by defendant's motion for summary judgment is purely one of law, we may review it on appeal even though the motion was denied and was followed by a full trial. *Payless Drug Stores v. Brown*, 300 Or 243, 245-48, 708 P2d 1143 (1985).

*v. Hedstrong,* 220 F2d 863, 866 (8th Cir 1955). Thus, the common characteristic of vehicles that are "passenger motor vehicles" is that they are designed for and capable of carrying persons other than the driver. That design and capacity is, we think, what makes a motor vehicle a "passenger motor vehicle."[4] Nothing in the Lemon Law suggests that the legislature intended to limit the term to automobiles or some other specific type of motor vehicle. Rather, by expressly covering all motor vehicles as defined in ORS 801.360, modified only by the adjective "passenger," the statutory text plainly encompasses any and all motor vehicles that are designed for and capable of carrying passengers—that is, persons other than the driver.

Defendant nevertheless argues that, because the legislature defined "passenger motor vehicle" by reference to a statute that defines only "motor vehicle," it intended to severely restrict the kinds of motor vehicles that are subject to the Lemon Law. Defendant refers to a number of other definitions in ORS chapter 801, which is part of the motor vehicle code, that define other, more limited classes of motor vehicles, such as farm tractors, ORS 801.265, golf carts, ORS 801.295, and tank vehicles, ORS 801.522. Defendant points out that, in defining motor vehicles for purposes of the Lemon Law, the legislature chose to use only the general definition of motor vehicle in ORS 801.360 rather than those more specific ones. That fact, according to defendant, suggests that it is no more likely that the legislature intended to include motor homes in the Lemon Law than that it intended to include any of those other specific types of motor vehicles. Defendant also points out that ORS 801.350(1) separately defines "[m]otor home" as a motor vehicle that is "reconstructed, permanently altered or originally designed to provide facilities for human habitation[.]" Defendant thus seems to suggest that the legislature intended to exclude any separately defined type of motor vehicle, including "motor

---

[4] That same understanding is reflected in other statutes in Oregon. For example, ORS 830.005(10) defines "passenger" for the purposes of the regulation of small watercraft as "every person on board a boat who is not the master, operator, crew member or other person engaged in any capacity in the business of the boat." That definition is consistent with our understanding of the use of "passenger" in the Lemon Law.

homes," from being a "passenger motor vehicle" under the Lemon Law. Finally, relying on the ordinary meaning of "passenger" as someone who rides in an automobile,[5] defendant contends that a "passenger motor vehicle" must be a motor vehicle that is primarily designed for transportation, not for habitation. Thus, because ORS 801.350(1) defines a motor home as a vehicle designed to provide human habitation, a motor home cannot be a "passenger motor vehicle" in defendant's view.

Defendant's argument fails in at least two respects. First, it misunderstands the relationship among the definitions in the vehicle code. "Motor vehicle" is defined in ORS 801.360 as a general and broad category that includes every vehicle that "is self-propelled or designed for self-propulsion." The more specific classes of vehicles to which defendant refers are all defined first as "motor vehicles." Those definitions then differentiate each class by describing the particular characteristics that set it apart from other classes of motor vehicles. *See, e.g.*, ORS 801.265 (farm tractors), ORS 801.295 (golf carts), and ORS 801.522 (tank vehicles). In other words, the specific definitions in ORS chapter 801 to which defendant points are subsets of the general category of "motor vehicles"; they do not limit the scope of what that general category encompasses. In short, the legislature defined "motor vehicle" for the purpose of the Lemon Law by expressly referring to the general definition of "motor vehicle" in ORS 801.360 and by adding the modifier "passenger" to it. That structure demonstrates that the legislature intended for the term "motor vehicle" under the Lemon Law to mean any type of motor vehicle, provided that the vehicle is also a "passenger" motor vehicle.

The second problem with defendant's argument is its assumption that a motor vehicle that has certain characteristics, such as being adapted for human habitation, cannot also have other characteristics, such as being adapted for carrying passengers.[6] In particular, assuming that the definition

---

[5] *See Webster's Third New Int'l Dictionary* at 1650.

[6] In another transportation mode, a "passenger train" may have facilities for human habitation, such as sleeping rooms, dining and lounge facilities, and restrooms. Those facilities do not mean that it is not designed for carrying passengers; rather, they are provided to support the train's ability to function in that role.

of "motor home" in ORS 801.350(1) bears on the analysis, nothing in that definition prevents a motor home from also being a passenger motor vehicle. Again, that statute defines "motor home" as a motor vehicle that is "reconstructed, permanently altered or originally designed to provide facilities for human habitation[.]" Those characteristics do not, however, necessarily preclude a motor home from having other characteristics in common with other motor vehicles, such as the ability to carry passengers. In short, we are not persuaded that the provisions of ORS chapter 801 demonstrate that a motor home cannot be a motor vehicle.

The history of changes made to the Lemon Law reinforces that conclusion. *See SAIF v. Walker,* 330 Or 102, 108-10, 996 P2d 979 (2000) (history of changes to a statute is part of the statute's context). As originally adopted, the definition of "motor vehicle" in ORS 646.315(2) concluded with the phrase "other than a motorcycle." Or Laws 1983, ch 469, § 1. Thus, in order to exempt motorcycles from the law's coverage, the legislature expressly excluded them. Then, in 1989, the legislature repealed the express exclusion, which had the effect of bringing motorcycles back within the Lemon Law. Or Laws 1989, ch 202, § 1. The initial adoption and the later repeal of the exemption for motorcycles suggest that the legislature understood the reference in ORS 646.315(2) to "passenger motor vehicle" to encompass motor vehicles, other than automobiles, that are designed for and capable of transporting passengers unless such vehicles are expressly exempted.[7] That is true even though a motorcycle is a subclass of motor vehicles that, like a motor home, is separately defined in chapter 801 of the vehicle code. *See* ORS 801.365. Morever, in that definition, a motorcycle is described, among other characteristics, as having a "seat or saddle for use of the rider"; the definition says nothing about a motorcycle's capacity to carry passengers. *See id.*

---

[7] Defendant relies on statements in the legislative history referring to the Lemon Law as applying to automobiles and motorcycles as demonstrating that "passenger motor vehicle" was intended to have a limited meaning. Those statements, however, demonstrate only that legislators used common terminology in discussing the bill and discussed it in terms of the types of claims that they thought might be most common. The statements do not establish that the legislators intended "passenger motor vehicle" to have a particular technical meaning or to be restricted to those specific vehicles.

■ As we have noted, many different kinds of motor vehicles qualify as being designed and having the capacity to carry passengers. A motor home is within that category. The fact that it also provides habitation is irrelevant to that conclusion. As discussed above, a vehicle that is capable of fulfilling one function is not necessarily incapable of fulfilling some other function. Defendants do not dispute in this case that the motor home in question was designed for carrying more than one person, only one of whom would be driving at any particular time. Any person who was not driving would necessarily be a passenger. Plaintiffs' motor home was thus a passenger motor vehicle as defined in ORS 646.315(2).[8]

Defendants argue that such an interpretation of "passenger motor vehicle" will result in the Lemon Law applying to transactions beyond what the legislature intended. But that argument overlooks the fact that the range of claims coming within the Lemon Law is not dictated solely by what qualifies as a new passenger motor vehicle. Only a "consumer" is entitled to a remedy under the Lemon Law, *see* ORS 646.325(1), and a "consumer" is defined as the "purchaser or lessee, other than for purposes of resale, of a new motor vehicle normally used for personal, family or household purposes." ORS 646.315(1). As a result, the normal use of the vehicle and the purchaser's purpose are significant limitations on the availability of a remedy under the Lemon Law. In this case, there is no dispute that the motor home was being used for personal, family, or household purposes or that plaintiffs purchased their motor home other than for the purpose of resale. For all of the above reasons, then, the trial court correctly denied defendant's motion for partial summary judgment.

In its second assignment of error, defendant argues that the trial court erred by trebling the amount of the jury's verdict pursuant to ORS 646.359 (1997) when it entered

---

[8] Given our conclusion that plaintiffs' motor home is a "passenger motor vehicle," it follows that the Lemon Law applies to all of plaintiffs' complaints, whether they relate to the aspects of the motor home that are vehicular (such as steering or transmission) or that involve habitation (such as water pressure or appliances). ORS 646.325 grants a remedy if the motor vehicle does not conform to the "applicable manufacturer's express warranties"; it is not limited to only some of those warranties.

judgment. More specifically, defendant contends that, because plaintiffs pursued other judicial remedies in addition to a Lemon Law claim, ORS 646.359 (1997) limited plaintiffs' recovery to the purchase price of the vehicle and certain incidental expenses and precluded an award of triple damages based on that refunded purchase price. To frame the issue better, we begin with an overview of the Lemon Law's provisions as they relate to the substantive remedies in ORS 646.335 and the triple damages award in ORS 646.359 (1997).

Under ORS 646.325, a consumer is entitled to a remedy if a new motor vehicle does not conform to the manufacturer's warranties, the consumer reports the nonconformities to the manufacturer or dealer within a specified period, and the manufacturer is notified of the defects and has an opportunity to correct them. Under ORS 646.335(1), a consumer is entitled to one of two remedies if the failure to repair or correct defects under the warranty impairs the vehicle's use, market value, or safety. First, the manufacturer may be required to replace the motor vehicle with a new one. Alternatively, it may be required to accept return of the vehicle from the consumer and to refund the purchase price and certain associated costs, less a "reasonable allowance" for the consumer's use of the vehicle. *Id.* The remedy available under the Lemon Law is not exclusive. Rather, ORS 646.375 expressly declares that the Lemon Law is not intended "in any way to limit the rights or remedies that are otherwise available to a consumer under any other law." But neither can the Lemon Law be used in conjunction with other remedies to recover more than the Lemon Law alone would provide. As provided in ORS 646.375, if the consumer elects to pursue any judicial remedies, "the remedy available under ORS 646.315 to 646.375" may not exceed the recovery authorized by ORS 646.335 without proof that any excess damages were a result of fault.

Those basic provisions have been a part of the Lemon Law since its original enactment in 1983. *See generally* Or Laws 1983, ch 469. In addition, the original act encouraged manufacturers to establish informal dispute settlement procedures in accordance with applicable federal regulations. If a manufacturer did so, the consumer could not

seek a remedy under the Lemon Law without first resorting to the procedure. Or Laws 1983, ch 469, § 5, *codified as* ORS 646.355. In its original form, the Lemon Law did not contain any other references to that procedure and did not impose any penalties on a manufacturer who failed to establish one.

In 1987, the legislature amended the Lemon Law to increase the incentives to manufacturers to provide informal dispute settlement procedures and to ensure that the procedures functioned fairly. *See* Or Laws 1987, ch 476, §§ 4-6. As pertinent here, the amended Lemon Law requires consumers to notify a manufacturer and give it an opportunity to correct defects before seeking a remedy under the Lemon Law; "notification" includes a request for an informal dispute resolution procedure. ORS 646.325(3). Of particular relevance to our analysis here, as a result of the 1987 amendments, the Lemon Law now provides for an award of triple damages to a successful plaintiff if the manufacturer either did not act in good faith in the informal dispute settlement procedure or has not established such a procedure. In both cases, a successful plaintiff may also be entitled to attorney fees and costs. ORS 646.359 (1997).

With that background, we turn to defendant's challenge to the award of triple damages in this case. Defendant's argument depends on ORS 646.375, the statute that limits the consumer's remedy if the consumer pursues other judicial remedies in addition to a Lemon Law claim. In relevant part, the statute provides:

> "[I]f the consumer elects to pursue any other remedy in state or federal court, the remedy available under ORS 646.315 to 646.375 shall not be available insofar as it would result in recovery in excess of the recovery authorized by ORS 646.335 without proof of fault resulting in damages in excess of such recovery."

In this case, plaintiffs pleaded and prevailed on claims brought under state and federal law that were additional to their remedy under the Lemon Law. Defendant argues that, because plaintiffs pursued those other claims, their Lemon Law remedy is limited to the refund of the purchase price of the vehicle, together with reimbursement of certain other costs and fees, as authorized by ORS 646.335(1). According to

defendant, any recovery for triple damages under ORS 646.359 (1997) is a recovery in excess of what ORS 646.335(1) authorizes and therefore requires proof of fault, which plaintiffs did not present.

The correctness of defendant's argument turns on what the legislature meant when it referred to "the remedy available under ORS 646.315 to 646.375." In defendant's view, that language plainly encompasses both the remedy that a consumer receives under ORS 646.335(1) for a dealer's failure to repair or correct defects in the vehicle and the further award of triple damages that a consumer may receive under ORS 646.359 (1997) for the dealer's failure to have in place a good-faith dispute settlement procedure. We disagree. As explained below, "the remedy" to which the statute refers is the consumer's remedy for the defective vehicle.

As a textual matter, the statute refers to "the remedy" using the definite article "the" and the singular form of the word "remedy." That language suggests that the legislature intended to refer to a specific remedy denoted elsewhere in the scheme, not to multiple remedies or remedies more generally. *See Osborn v. PSRB*, 325 Or 135, 142-43, 934 P2d 391 (1997) (statute's use of the definite article "the" indicates legislature's intent to refer to a previous part of the statute); *Anderson v. Jensen Racing, Inc.*, 324 Or 570, 578-79, 931 P2d 763 (1997) (the definite article "the" functions as an adjective to denote a particular, specified thing, not a general, unspecified class of things).

■ Context reinforces that conclusion and confirms that the specific single remedy referred to in the limitations provision (ORS 646.375) is the consumer's remedy for the defective motor vehicle under ORS 646.335(1). Using basically identical language, ORS 646.325 provides that "[t]*he remedy under the provisions of ORS 646.315 to 646.375* is available to a consumer" if particular circumstances are satisfied.[9] (Emphasis added.) The circumstances that ORS 646.325

---

[9] ORS 646.325 refers to "[t]he remedy under *the provisions of* ORS 646.315 to ORS 646.375" (emphasis added) and ORS 646.375 refers to "the remedy available under ORS 646.315 to 646.375." Although the precise wording of the two statutes differs slightly, the difference is not substantive.

then lists all pertain to the defective condition of the consumer's vehicle and the manufacturer's opportunity to correct the defects. *See* ORS 646.325(1)-(3). The ordinary presumption is that the same language, when used in related statutes, has the same meaning. *See PGE*, 317 Or at 611. Because both ORS 646.375 and ORS 646.325 refer to "the remedy under" ORS 646.315 to ORS 646.375, and because that language in ORS 646.325 clearly means only the remedy available to a consumer under ORS 646.335(1) based on the defective condition of the vehicle, the remedy referred to in ORS 646.375(1) also properly is interpreted to be that remedy. Thus, if a consumer pursues other judicial remedies in addition to a Lemon Law claim, ORS 646.375 limits the consumer's remedy for purchase of a defective vehicle. It does not preclude an award for the manufacturer's failure to have a good-faith informal dispute settlement procedure in place.

That understanding, moreover, is consistent with the Lemon Law's overall structure. ORS 646.375 permits a plaintiff to pursue other remedies at the same time as pursuing a Lemon Law claim. It also, however, limits the consumer's recovery under the Lemon Law—in the absence of proof of fault—insofar as the aggregate recovery would exceed the amount authorized by ORS 646.335(1). Thus, the purpose of the limitation provision is to prevent a windfall to the plaintiff in the form of a double recovery for the value of the defective vehicle. In contrast, the triple damages award under ORS 646.359 (1997) serves the different purpose of penalizing manufacturers who fail to have in place a good-faith informal dispute settlement procedure.

In the context of the Lemon Law as a whole, then, it makes particular sense to read ORS 646.375 as limiting only the consumer's remedy for refund or replacement of the defective vehicle and not as also precluding a triple award for the manufacturer's failure to provide a good-faith informal dispute settlement procedure. Only the remedy for the defective vehicle is potentially duplicated by the pursuit of other judicial claims. There is no other claim that a consumer can bring to vindicate the consumer's, or the general public's, interest in having available an informal dispute settlement procedure to avoid the costly litigation of Lemon Law claims in court. To deny a consumer a triple damages award because

the consumer pursued multiple potential remedies for the defective vehicle would do nothing to further the purpose of avoiding a double recovery by a successful plaintiff. It would, however, frustrate the purpose of providing an independent incentive to manufacturers to provide a settlement procedure, and it would provide manufacturers with a windfall in that sense. For that reason, defendant's proposed understanding of the key statutory language simply is not plausible when considered in the context of the statutory scheme as a whole. *See State v. Hval*, 174 Or App 164, 168-69, 25 P3d 958 (2001) (for a statute to be ambiguous, it must be susceptible of two meanings that are plausible in the context of the statutory scheme as a whole).

Consequently, we hold that, when a consumer pursues other judicial remedies in addition to a Lemon Law claim, ORS 646.375 limits only a plaintiff's remedy under ORS 646.335 for the failure to conform the motor vehicle to its express warranties. The statute does not preclude an award of triple damages under ORS 646.359 (1997) based on the manufacturer's failure to have established a good-faith informal dispute settlement procedure. The trial court therefore did not err in this case in awarding triple damages to plaintiffs, because it is undisputed that the manufacturer had no such procedure in place.

■     In its third and fourth assignments of error, defendant argues that the jury's verdict awarding plaintiffs a refund of the purchase price of the vehicle does not constitute the "damages" to which ORS 646.359 (1997) refers. Specifically, defendant contends that such a remedy is the equivalent of rescission, which is legally distinct from an award of damages. In traditional terms, rescission places the parties in the positions that they occupied before the transaction occurred; damages, in contrast, make a plaintiff whole for harm that the plaintiff has suffered. *See Sager v. McClenden*, 296 Or 33, 37, 672 P2d 697 (1983) (when used in the plural, "damages" means compensation in money for a loss or damage; citing *Black's Law Dictionary*). Here, the award restored plaintiffs to their previous position. That is, they returned the motor home to the dealer and, in return, received a refund of the purchase price and related expenses. Therefore, according to defendant, the jury's award of the purchase price

of the defective vehicle could not appropriately be the foundation for an award of triple damages.

Defendant's argument assumes that whenever the legislature uses the term "damages" it must intend the legal meaning given to the term for purposes of traditional common-law remedies. That is not the only meaning, however, that can be attributed to the term. In a broader everyday usage, the term "damages" can encompass "the estimated reparation in money for detriment or injury sustained : *compensation or satisfaction imposed by law for wrong* or injury caused by a violation of a legal right." *Webster's Third New Int'l Dictionary* at 571 (emphasis added). "Reparation," in turn, is "the act or process of mending or restoring : the act of making amends, offering explanation, or giving satisfaction for a wrong or injury." *Id.* at 1923. A refund of the purchase price of the vehicle qualifies as compensation or satisfaction imposed by law for a wrong—the failure of the vehicle to conform to the manufacturer's express warranties. The ordinary meaning of the term "damages" therefore is broad enough to encompass the relief awarded by the jury in this case.[10]

■   Again, we must construe the terms that the legislature used in the context of the Lemon Law as a whole. We consider, then, whether one or both meanings of the term "damages" is plausible given the overall purpose and structure of the statutory scheme. The immediate problem with attributing only the more narrow common-law definition to damages is that such an interpretation would render the triple damages award authorized by ORS 646.335(1) largely inconsequential, because the only "damages" that would qualify for tripling would be the award for taxes, license fees, and the like. As compared to the refunded purchase price of the new motor vehicle, those amounts, even when tripled, are relatively trivial and would provide little or no incentive for manufacturers to establish informal dispute settlement procedures. In the context of the structure and purpose of the Lemon Law as a whole, interpreting the reference in ORS 646.375 to mean only damages to make a plaintiff "whole" for

---

[10] This case presents no issue regarding whether a triple damages award may be predicated on the value of a replacement vehicle awarded to a successful Lemon Law plaintiff, and we express no view on that issue.

harm or injury suffered would so undermine the obvious objective of the statute as not to be a plausible reading in context.

But even if it were a plausible way to read the term, that conclusion would at most render the term ambiguous at the textual and contextual level. We would then have to consider the provision's legislative history. *PGE*, 317 Or at 611. That history eliminates any uncertainty as to the legislature's intent. In the hearings on the 1987 amendments, legislators repeatedly referred to the triple damages award as "potentially for the full value of the vehicle." Minutes, Senate Committee on Business, Housing & Finance, HB 2599, May 19, 1987, p 3 (testimony of Rep. Peg Jolin). One specific example hypothesized a car purchased for $20,000 and a triple damages award that would be "three times the $20,000 less usage of the vehicle." *Id.* at p 4 (comments of Sen. Bill Kennemer). At no point did any legislator express disagreement with the *measure* of damages being the purchase price of the defective vehicle. Rather, legislative debate focused on whether three was the appropriate multiplier and on the extent of a trial court's discretion in making the award. *See generally id.* at pp 2-5.

In short, to whatever extent the legislature's use of the term "damages" in ORS 646.375 is susceptible of more than one meaning, the legislative history eliminates that ambiguity. The legislature expressly contemplated that triple damages would be based on the purchase price of the defective motor vehicle, less the reasonable value of the consumer's use of the vehicle.[11] The trial court in this case properly calculated the award of triple damages based on the refund value of the motor home, together with the amounts awarded for associated costs and fees.

Affirmed.

---

[11] Defendant does not claim an entitlement to such an offset on the record in this case. Such a reduction can, however, be significant; indeed, in at least one reported case under a similar statute in another jurisdiction, the offset was greater than the amount of the refund, as a result of which the plaintiff received no recovery and no triple damages. *See Taylor v. Volvo North America Corp.,* 339 NC 238, 451 SE2d 618 (1994) (value of the plaintiff's use of vehicle was greater than payments the plaintiff had made on lease).