Argued and submitted December 18, 2001, reversed and remanded July 17, 2002

In the Matter of the Compensation of
Myron Rasmussen, Claimant.

Myron RASMUSSEN,
*Petitioner,*

*v.*

SAIF CORPORATION
and Nurmi Construction,
*Respondents.*

00-1698; A112064

50 P3d 248

Joseph Di Bartolomeo argued the cause for petitioner. With him on the briefs was Lavis & Di Bartolomeo.

Julene M. Quinn argued the cause and filed the brief for respondents.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

LINDER, J.

## LINDER, J.

Claimant seeks review of a Workers' Compensation Board order determining that SAIF adequately responded to claimant's "omitted condition" claim within the time prescribed by ORS 656.262(6)(d) (1999). Because of that determination, the board further concluded that SAIF's response was not a denial under ORS 656.386(1)(b)(B) (1999) and that claimant was not entitled to attorney fees under ORS 656.386(1)(a) (1999). We review the board's conclusion for its legal correctness, see ORS 183.482(8)(a), and reverse and remand.

Claimant injured his knee on September 3, 1999, while working for SAIF's insured. His treating physician, Dr. North, diagnosed a right knee anterior cruciate ligament (ACL) tear, a posterior horn medial meniscus tear, and a loose body in the knee. In response to an inquiry from SAIF, North opined that claimant's need for treatment was caused by the workplace injury. SAIF then obtained an independent medical evaluation from Dr. Schilperoort. Schilperoort diagnosed a knee sprain secondary to the on-the-job injury but concluded that a medial meniscus tear, ACL disruption, and loose bodies were preexisting conditions that were not causally related to the on-the-job injury. He further opined that claimant's continuing need for treatment was based in major part on preexisting conditions. On November 23, 1999, SAIF accepted a right knee medial capsule ligament sprain.

On January 25, 2000, claimant's attorney wrote a letter to SAIF, asking, in pertinent part:

"Pursuant to ORS 656.262(7)(a), I am requesting formal claim acceptance of the following conditions:

"1. Right knee anterior cruciate ligament tear as a combined condition;

"2. Right posterior horn medial meniscus tear as a combined condition;

"3. Loose body right knee as a combined condition.

"Please respond within 30 days of today's letter."

On February 1, 2000, SAIF responded to claimant's request by advising:

"We are currently investigating the relationship of those conditions to our accepted condition of right knee medial capsule ligament sprain and will let you know our decision within the time limit provided by law."

On February 29, 2000, claimant requested a hearing on what he asserted was SAIF's denial of the omitted conditions. Also in February, SAIF had Dr. James review the claim. James disagreed with Schilperoort's diagnosis and agreed with North's diagnosis and recommended a diagnostic arthroscopy. James was unable to state, however, to what extent the September 3, 1999, injury was the cause of claimant's current need for treatment. On March 21, 2000, SAIF sent an additional response to claimant, explaining:

"[W]e have authorized an arthroscopy as a diagnostic procedure. Dr. North will perform the procedure, which we have requested he videotape. We will review Dr. North's operative report and request that Dr. James and Dr. Schilperoort review the videotape from the procedure. Upon receipt of this additional information we will be in a position to accept or deny the additional conditions identified in your letter of January 25, 2000."

Claimant had the arthroscopic procedure and, on May 16, 2000, SAIF accepted the three conditions referred to in claimant's January 25 letter.

The hearing on claimant's claim was held on May 26, 2000. Because SAIF by then had accepted the three omitted conditions, the sole issue at the hearing was whether claimant was entitled to attorney fees on the ground that SAIF failed to respond adequately to claimant's January 25 letter within 30 days, as required by ORS 656.262(6)(d) (1999).[1] That statute provides:

---

[1] Claimant's letter referred to ORS 656.262(7)(a) (1999), which relates to aggravation and new medical condition claims. The parties, the ALJ, and the board all have treated claimant's claim as one for an omitted condition under ORS 656.262(6)(d) (1999). SAIF does not argue that claimant's reference to that statute misled SAIF or that claimant is not entitled to rely on a statute other than the one to which he referred in the letter.

"An injured worker who believes that a condition has been incorrectly omitted from a notice of acceptance, or that the notice is otherwise deficient, first must communicate in writing to the insurer or self-insured employer the worker's objections to the notice. The insurer or self-insured employer has 30 days from receipt of the communication from the worker *to revise the notice or to make other written clarification in response.* A worker who fails to comply with the communication requirements of this paragraph may not allege at any hearing or other proceeding on the claim a de facto denial of a condition based on information in the notice of acceptance from the insurer or self-insured employer. Notwithstanding any other provision of this chapter, the worker may initiate objection to the notice of acceptance at any time."

(Emphasis added.)

After the hearing, the ALJ concluded that SAIF's February 1 letter was "other written clarification in response" to claimant's January 25 letter and that claimant therefore was not entitled to attorney fees under ORS 656.386(1)(b)(B) (1999).[2] The board adopted and affirmed the ALJ's decision, and claimant petitioned this court for judicial review.[3]

On review, claimant argues that the board erred in concluding that SAIF's February 1, 2000, letter constituted sufficient "written clarification" to satisfy ORS 656.262(6)(d)

---

[2] ORS 656.386(1)(b)(B) (1999) provided that, in cases involving denied claims where a claimant prevails against the denial, attorney fees may be awarded. It specifically included claims for conditions "omitted from a notice of acceptance, made pursuant to ORS 656.262(6)(d), which the insurer or self-insured employer does not respond to within 30 days[.]"

Both ORS 656.262(6)(d) and ORS 656.386(1)(b)(B) were amended in 2001 to expand the timeline to 60 days. Or Laws 2001, ch 865, §§ 7, 9.

[3] After claimant petitioned for review, SAIF moved to dismiss claimant's petition and to remand the case to the board for the an award of an assessed attorney fee, urging that authority other than ORS 656.262(6)(d) (1999) provided a basis for such an award. Claimant opposed the remand, because SAIF failed to identify the alternative basis for the award and because the legal position taken by the board regarding the meaning of ORS 656.262(6)(d) (1999) was a matter of importance. We denied SAIF's motion. Because no other statutory grounds for an award of attorney fees was presented to the board or has been presented to us on review, our discussion is limited to claimant's entitlement to an attorney fee under ORS 656.262(6)(d) (1999); we express no opinion as to whether, under the facts presented, any other statute might also apply.

(1999). In particular, claimant asserts that an insurer's statement of intent to investigate further is not "clarification" of a previous notice of acceptance. In response, SAIF argues that, because the statute requires an insurer *either* "to revise the notice" *or* "to make other written clarification," the clarification need not be of the notice, but may be clarification of other kinds. SAIF argues that its letter to claimant provided clarification by advising claimant that SAIF would investigate the relationship of the allegedly omitted conditions and would let claimant know of its decision at an unspecified later date. According to SAIF, that response made SAIF's position "clearer and less ambiguous" by telling claimant that the omitted conditions were neither accepted nor denied and that SAIF would investigate the matter.

■ The parties' arguments present us with a question of statutory construction. The starting point, therefore, is the statute's text and context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993) (first step in interpreting a statute is to examine the plain meaning of the text and context). "Clarification" refers to "the act or process of clarifying." *Webster's Third New Int'l Dictionary*, 415 (unabridged ed 1993). "To clarify," in turn, means to eliminate confusion, doubt or uncertainty; to make understandable; to make less complex or ambiguous.[4] As a result, "clarification" is a term that makes sense only in reference to a *subject*. That is, a "clarification" must be a clarification *of something*, such as a state of mind or understanding, a thought process, an explanation, or an issue.[5]

The only possible express referent for "clarification" in the sentence in which the word occurs is the "notice" of acceptance. That leaves us with two possible choices: either

---

[4] The potentially relevant definitions of "clarify" include:

"**3 a** : to free (the mind or understanding) of confusion, doubt, or uncertainty ‹the conference did help to harmonize, as well as -, the thinking of the leaders of the republics on a number of controversial questions—*Atlantic*› ‹the cold night air *clarified* his muddled brain› ‹hoped a long rest would - his mind› : to explain clearly : make understandable : reveal, interpret ‹- a process by the use of diagnosis› **4** : to make less complex or less ambiguous : put in order : define ‹- one's life› ‹- an issue›."

*Id.*

[5] See the examples in the definitions in footnote 4.

the sentence requires clarification of the notice or it is satisfied by clarification of anything else the insurer might choose to clarify. The latter understanding would render the term so broad as to be virtually meaningless. Given the statute's obvious purpose of providing the claimant and the insurer with an informal way of resolving issues as to the scope and terms of a notice of acceptance or denial, reading the statute broadly to permit clarification of anything simply is not plausible. *See Sweeney v. SMC Corp.*, 178 Or App 576, 588, 37 P3d 244 (2002) (meaning to be ascribed to statutory terms must be plausible in the context of the overall policy of the statutory scheme).

The subsection as a whole reinforces the conclusion that the clarification required of an insurer is clarification of the notice. In general, what the statute provides is a process whereby the injured worker can raise objections with the insurer and the insurer is then obligated to respond to those objections. Significantly, the only objections that the injured worker may raise are objections to the notice. It makes simple sense, then, that the insurer's response would have to clarify the notice rather than something else. Moreover, the objections to the notice that the injured worker can raise are of two kinds: (1) that a condition has been incorrectly omitted; and (2) that the notice is "otherwise deficient." In turn, the insurer's response can be one of two kinds: (1) a revision of the notice; and (2) any other written clarification. As a matter of both structure and logic, when the subsection is read as a whole, "other written clarification" appears to be broadly worded because of the unspecified nature of the "other deficiencies" in the notice that the injured worker may raise.[6] In all events, the only plausible reading of the statute, given its plain language and context, is that the written clarification

___

[6] Worth noting in that regard is that a notice of acceptance, in addition to specifying what conditions the insurer is accepting as compensable, must state whether the claim is considered disabling or nondisabling and must inform the claimant of certain hearing, reinstatement, and assistance program rights. ORS 656.262(6)(b)(A)-(E). Thus, the "deficiencies" raised by an injured worker might relate to a wide range of things other than the conditions that are accepted, with the result that an insurer's response might not necessitate an actual revision of the notice of acceptance but instead might necessitate only clarification of the notice in other regards.

required of the insurer is clarification of the notice, not clarification of something else.[7]

We also reject SAIF's argument that interpreting the statute in that way brings it into conflict with the provisions that give an insurer 90 days to accept or deny initial claims and claims for new or aggravated conditions. *See* ORS 656.262(6)(a) (1999) (initial claims); ORS 656.262(7)(a) (1999) (new and aggravation claims). The subsections that SAIF relies on, by their explicit terms, govern the time frames for issuing an initial notice of acceptance or denial, either of the original claim or a claim that arises later. *Id.* In contrast, the subsection that concerns us in this case, ORS 656.262(6)(d) (1999), applies only after an initial notice has issued. Those simply are different phases of claim processing, and the legislature in various ways provides different processing requirements before and after issuance of a notice of acceptance or denial. *See, e.g.*, ORS 656.262(6)(a) (describing special standards that apply when an insurer seeks to revoke a notice acceptance after issuing it). There is no conflict.

The remaining question is whether SAIF's February 1, 2000, letter provided claimant with "clarification" of SAIF's previous acceptance in a manner that comports with ORS 656.262(6)(d) (1999). As noted, SAIF indicated in that letter that it was investigating the omitted conditions and that it later would inform claimant of its decision to accept or to deny those conditions. That response did nothing to clarify SAIF's earlier notice of acceptance. As relevant here, a notice of acceptance must specify what conditions are compensable. Claimant sent SAIF the letter regarding the omitted conditions so that claimant would know whether SAIF would accept or deny those conditions. SAIF's response did nothing to clarify that issue. Although SAIF's state of mind may have been clarified by its letter (*i.e.*, "we're thinking about it"), its

---

[7] Taken to its logical extreme, SAIF's position would mean that an insurer would meet its obligation under the statute to respond if, within 30 days, the insurer provided the claimant with a letter saying, "We have received your letter and someone will review it." Although such a letter might clarify something (*i.e.*, that the letter arrived and the insurer is aware of it), as clarification *in response* to the claimant's communication, it is meaningless.

notice of acceptance was not clarified. The board erred in concluding otherwise.

Reversed and remanded.