Submitted on remand from the Oregon Supreme Court September 2, 2020, affirmed on appeal and cross-appeal July 14, petition for review denied November 4, 2021 (368 Or 702)

Cole A. ORTEGA,
*Plaintiff-Respondent*
*Cross-Appellant,*

*v.*

Darrell D. MARTIN,
*Defendant,*
*and*

STATE OF OREGON,
*Defendant-Appellant*
*Cross-Respondent.*

Tillamook County Circuit Court
102070; A159190

497 P3d 314

On remand from the Supreme Court, the issue is the state's entitlement to recreational immunity under ORS 105.682 for severe injuries plaintiff sustained in a collision with a dory boat while he was surfing in Pacific City. The state advances two "purely legal" arguments as to why it could be said to "permit" recreational use where plaintiff was injured: (1) that the state's statutory obligations regarding coastal areas are sufficient to establish, as a matter of law, that it permits recreational use of the shore at Pacific City—and, for that matter, all shorelands; and (2) that it permits recreational use as a matter of law "by tolerating or declining to restrict that use." *Held*: Neither of the state's "matter of law" arguments was consistent with the recreational immunity statute, so the Court of Appeals rejected them and adhered to the remainder of its original opinion.

Affirmed on appeal and cross-appeal.

On remand from the Oregon Supreme Court, *Ortega v. Martin*, 366 Or 760, 468 P3d 945 (2020).

Mari Garric Trevino, Judge.

Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and Denise G. Fjordbeck, Assistant Attorney General, filed the opening brief for appellant-cross-respondent. On the reply-cross answering brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Denise G. Fjordbeck, Assistant

Attorney General. On the supplemental brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Peenesh Shah, Assistant Attorney General.

Helen C. Tompkins filed the briefs for respondent-cross-appellant. Also on the supplemental brief was Tompkins Law Office, LLC.

Kathryn H. Clarke filed the brief *amicus curiae* for Oregon Trial Lawyers Association.

Before DeHoog, Presiding Judge, and Lagesen, Judge, and Aoyagi, Judge.

LAGESEN, J.

Affirmed on appeal and cross-appeal.

**LAGESEN, J.**

This case is before us on remand from the Supreme Court, *Ortega v. Martin*, 366 Or 760, 468 P3d 945 (2020) (*Ortega II*). At issue on remand is the state's entitlement to recreational immunity under ORS 105.682 for severe injuries plaintiff sustained in a collision with a dory boat while he was surfing in Pacific City. In our original opinion, we rejected the state's argument that it was entitled to recreational immunity as a matter of law under ORS 105.682, a statute that limits an owner's liability for injuries on the land if the owner "directly or indirectly permits" the public to use the land for recreational purposes. *Ortega v. Martin*, 293 Or App 180, 191-94, 427 P3d 1103 (2018) (*Ortega I*). We reasoned that an owner does not "permit" recreational use of land within the meaning of that statute unless the owner has authority to decide whether to allow recreational use in the first place. *Id*. at 190. In addition to resolving the recreational immunity issue, we also rejected plaintiff's cross-appeal, which challenged the application of the statutory damages cap to limit his recovery. *Id*. at 195-96.

*Ortega I* was one of two decisions that we issued on the same day involving the recreational immunity statute, the other being *McCormick v. State Parks and Recreation Dept.*, 293 Or App 197, 427 P3d 199 (2018) (*McCormick I*). In *McCormick I*, which involved a diving injury at Lake Billy Chinook, we relied on that same interpretation of "permit" and concluded that, because the state had not demonstrated that it had authority to decide whether to allow public recreation at the lake, "under our decision in *Ortega*, it has not established as a matter of law that it 'permit[ted]' the recreational use of Lake Billy Chinook within the meaning of ORS 105.682." *McCormick I*, 293 Or App at 201. The state petitioned for review in both cases, and the Supreme Court allowed review in *McCormick I* but held the petition for review in *Ortega I* in abeyance.

Ultimately, the Supreme Court reversed our decision in *McCormick I*, interpreting ORS 105.682 differently than we had. 366 Or 452, 466 P3d 10 (2020) (*McCormick II*). As the court interpreted ORS 105.682, "an owner can 'directly or indirectly permit' the use of its land for the

purposes of the recreational immunity statutes, even if the public already has a right to use the land for that purpose." 366 Or at 473. The Supreme Court then applied that interpretation to the factual record before it and concluded that we had erred in reversing the trial court's grant of summary judgment.[1]

After issuing its decision in *McCormick II*, the Supreme Court allowed the state's petition for review in *Ortega I*, vacated our decision, and remanded the case to us for reconsideration in light of *McCormick II*. We now undertake that task, with the help of supplemental briefing from the parties.

As a starting point, some procedural context is important. Although *McCormick I* and *Ortega I* involved similar questions of statutory interpretation, they posed those questions in different procedural postures. In *McCormick I*, the trial court had *granted* the state's motion for summary judgment on the basis of recreational immunity, and the plaintiff had appealed the resulting judgment. By contrast, the trial court in this case *denied* the state's motion for summary judgment on the recreational-immunity grounds, and the case went to trial, resulting in a verdict for plaintiff. 293 Or App at 182.

As it was when this matter was first before us, this procedural posture is significant and circumscribes our review of the state's claimed entitlement to recreational immunity under the reasoning of *McCormick II*. That is because our authority to review the denial of a motion for summary judgment is narrow. As we explained in *Ortega I*, our review in this procedural posture is limited to the consideration of a "purely legal contention," that is, one that can be decided without the establishment of any predicate facts, which means that any such facts must be *immaterial* to the ruling. 293 Or App at 186-87; *see Freeman v. Stuart*, 203 Or App 191, 194, 125 P3d 786 (2005) (stating reviewability

---

[1] The court also remanded the case to us to address the plaintiff's alternative argument concerning a $5 fee that was charged for entering the park by car, 366 Or at 474, and we then rejected that argument on remand. *McCormick v. State Parks and Recreation Dept.*, 308 Or App 220, 222, 482 P3d 187 (2020).

principle); *see also Sweeney v. SMC Corp.*, 178 Or App 576, 579 n 3, 37 P3d 244 (2002) (same).

Recognizing that limitation, the state's initial briefing in this case advanced arguments for reversal under ORS 105.682 that did not depend on what the adjudicative facts established in the summary judgment record may or may not show. Rather, the state urged a construction of the statute under which "an owner can be said to 'permit' the public's recreational use of land so long as the owner holds that land open for public recreational use, or facilitates that use." The state argued that the trial court had committed reversible error—and was required to grant its motion for summary judgment on recreational immunity—not because of predicate facts in the summary judgment record showing that the state permitted recreational use but, rather, because the state permits recreational use of the public shore *as a matter of state law.*

Specifically, the state pointed to statutes reflecting that the state had "actively encourage[d], preserve[d], and facilitate[d]" recreational use of the coastal shore. The state argued that, under ORS 390.632(1), the Oregon Parks and Recreation Department "coordinate[s] with affected local governments to provide increased public access to the coastal shorelands," and under ORS 390.632(2), the department may encourage and facilitate access by posting signs and maintaining parking and trash facilities. It further argued that, under ORS 390.610, the legislature has declared a state policy "to do whatever is necessary to preserve and protect scenic and recreational use" of the ocean shore. In the state's view, "[b]y taking on those responsibilities, the state has 'made possible' recreational use by the public, and it can therefore be said to 'permit' that use."[2]

Because we concluded that an owner cannot "permit" the use of the owner's land for purposes of ORS 105.682 when the public already has a right to use that land for

---

[2] By way of a footnote, the state attempted to distinguish the ocean shore from other state lands:

"Importantly, the state's acceptance of those responsibilities, as well as its designation of the ocean shore specifically as a recreation area, *see* ORS 390.615, distinguish the ocean shore from other state lands—such as public roads—in which the public has a right of access."

recreational purposes, we did not reach the merits of the state's contentions that, by virtue of its statutory responsibilities, the state had "permitted" use of its shores for recreational purposes.

On remand, *McCormick II* changes our understanding of ORS 105.682, but it does not change the procedural posture of the state's appeal in this case. If anything, the fact-bound application of ORS 105.682 in *McCormick II* highlights that the state is no longer on the narrow path to reversal of the judgment based on the denial of its summary judgment motion.

In *McCormick II*, the Supreme Court included this summary of its interpretation of ORS 105.682 (captioned "Statutory Interpretation Conclusion"):

> "Based on the text, context, and legislative history of ORS 105.682, we conclude that an owner can 'directly or indirectly permit' the use of its land for the purposes of the recreational immunity statutes, even if the public already has a right to use the land for that purpose. *The quoted phrase itself indicates that the permission can take different forms, which, in turn, indicates that an owner can 'permit' recreational use of its property if, among other alternatives, it makes the use possible.*"

366 Or at 473 (emphasis added). The paragraph that follows is captioned "Application," and it applies the court's understanding of the phrase "directly or indirectly permit" to the summary judgment record in that case:

> "Here, it is undisputed that the state made Lake Billy Chinook accessible for recreation. Among other things, the state developed and maintained day use areas and facilities for recreating in the lake, including facilities for boating and swimming. As plaintiff himself has stated, 'the only way to safely access the lake is to use one of the three day use areas.' *Through its actions*, the state 'permit[ted]' public recreational use for the purposes of ORS 105.682. Consequently, the Court of Appeals erred in reversing the trial court's judgment on the ground that it did ***."

*Id.* at 474 (emphasis added).

As that paragraph demonstrates, *McCormick II* treated the legal question as one that turned on predicate

facts regarding the state's actions to make recreational use possible, which could take many forms—in that case, the state's development and maintenance of the day use areas and facilities, including providing the only safe access to the lake. *Id.*

For the reasons explained in our original opinion, we cannot review that type of legal question—that is, one that depends on the application of the law to predicate facts established at the summary judgment stage. 293 Or App at 186-87; *Mt. Fir Lumber Co. v. Temple Dist. Co.*, 70 Or App 192, 198, 688 P2d 1378 (1984) ("It is not the purpose of the summary judgment procedure to provide an unsuccessful movant with an alternative to a plenary trial, or with an alternative record on which to rely on appeal." (Emphasis omitted.)); *cf. Payless Drug Stores v. Brown*, 300 Or 243, 247, 708 P2d 1143 (1985) (explaining that the prudential considerations identified in *Mt. Fir Lumber Co.* are not present in the case of a purely legal question, like the constitutionality of a law, which is "rarely if ever dependent on facts, least of all on the kind of facts denominated as 'adjudicative facts' in the Oregon Evidence Code (Rule 201(a)) and subject to being proved by evidence").

Thus, to the extent that the state asks us to apply the *McCormick II* interpretation of the statute to a factual record like the one developed by the parties and considered by the court in that case, those contentions are unreviewable. The only issues that we can consider on appeal are the state's purely legal contentions about the operation of the statute—that is, contentions that the state is entitled to recreational immunity no matter what the evidence at trial might have shown about the state's actions as to the area where plaintiff was injured.

As we understand the state's arguments on remand, it advances two contentions of that "purely legal" variety. First, it reprises the contention that its statutory obligations regarding coastal areas are sufficient to establish, as a matter of law, that it permits recreational use of the shore at Pacific City—and, for that matter, all shorelands. It states:

"As the state previously argued before this court, the state has taken several actions that make the ocean and

ocean shore accessible or usable for recreation. Under ORS 390.632(1), the Oregon Parks and Recreation Department 'coordinate[s] with affected local governments to provide increased public access to the coastal shorelands,' and under subsection (2) of the same statute, it encourages and facilitates access by posting signs and maintaining parking and trash facilities. Moreover, under ORS 390.610, the legislature has declared a state policy 'to do whatever is necessary to preserve and protect scenic and recreational use' of the ocean shore. By taking on those responsibilities, the state has made the ocean and ocean shore accessible to recreational use by the public, and it can therefore be said to 'permit' that use."

(Internal citations omitted.)

Alternatively, the state argues that it has permitted recreational use as a matter of law "by tolerating or declining to restrict that use." That is, the state argues that, "[e]ven if the state cannot fully exclude the public from using the ocean and ocean shore for recreation, it retains some authority to limit such use" under OAR chapter 736, division 021 (General Ocean Shore State Recreation Area Rules). And, "[b]ecause the state 'permits' any recreational use that would be impermissible under the narrowest set of regulations the state could impose without substantially impairing the public's interest, the state is entitled to recreational immunity."

The court's interpretation of ORS 105.682 in *McCormick II* does not foreclose those types of matter-of-law conclusions as to what constitutes "permitting" use under the statute, but neither does it endorse them. *See* 366 Or at 473 n 7 ("We need not determine the full range of conduct that can constitute 'permitting.' It may be that the state 'permits' recreational use of the lake simply by tolerating the use or by declining to restrict it as much as possible, but we need not decide those issues to resolve this case."). *McCormick II* is, at most, silent on those questions; and, having now considered the merits of the state's contentions on those points, we are not persuaded that either of the state's "matter of law" arguments is consistent with the recreational immunity statute.

The logical consequence of the state's "matter of law" arguments is that, regardless of what actions the state has undertaken as a factual matter, it is entitled to recreational immunity because it has the authority or responsibility to take those actions with regard to the ocean or ocean shore. In other words, the state argues that, as a categorical matter, it is entitled to recreational immunity for injuries on the ocean shores simply by virtue of the fact that it is state land, and the legislature has directed the state to manage that land in certain ways, no matter what the state has actually done to encourage and facilitate access or recreational use there, or to, as a factual matter, comply with those statutory obligations.

If that had been the legislature's intent—to create a blanket recreational immunity for all of the ocean shore, regardless of the state's conduct as to that land—we would expect a far less convoluted approach than the "directly or indirectly permit" text in ORS 105.682. It is important to remember that the state, as a sovereign, would be immune from tort liability absent legislative action. *Jarrett v. Wills*, 235 Or 51, 53, 383 P2d 995 (1963). The only reason that the recreational immunity statute applies at all to plaintiff's negligence claim against the state for an injury occurring at the shore is because the legislature waived the state's sovereign immunity under the Oregon Tort Claims Act (OTCA). If the legislature had intended the categorical approach to state liability for oceans and ocean shores that the state now claims, the direct and, we think, more likely approach would have been to retract its waiver of sovereign immunity, thereby restoring its sovereign immunity from liability for claims like plaintiff's. Given that easy path to matter-of-law immunity, it does not seem plausible that the legislature intended to accomplish the same thing through the convoluted process of waiving its sovereign immunity under the OTCA with respect to injuries at the shore, then granting recreational immunity—as a matter of law—under ORS 105.682 for those same injuries as being on land "permitted" by the state to be used for recreational purposes. At a minimum, given the OTCA, we think that the legislature would have said explicitly, in some statute, that it intended to immunize the state from liability for injuries occurring

from the recreational use of state land. Beyond that, nothing we have seen in our review of the legislative history of the recreational immunity statute indicates an intention by the legislature to create "matter of law" recreational immunity for the state along the state's ocean shores.

In sum, on remand, we are not persuaded that the state is entitled to recreational immunity as a purely legal contention under the Supreme Court's interpretation of ORS 105.682. As *McCormick II* itself demonstrates, the question of immunity will generally involve the application of the recreational immunity statute to the particular facts of the case—a question that is not properly before us on review of the denial of a motion for summary judgment.[3] We therefore reject the state's recreational immunity argument and adhere to the remainder of our opinion, which addressed the state's entitlement to discretionary immunity and plaintiff's cross-appeal and which was not disturbed by *McCormick II*.

Affirmed on appeal and cross-appeal.

---

[3] In light of our disposition, we need not address plaintiff's arguments regarding the state's shifting theories, including plaintiff's contention that, as part of its trial strategy, the state abandoned its defense based on recreational immunity, offering no immunity defense, submitting no jury instructions on the theory, and making no motion for directed verdict concerning recreational immunity.